```
FILED & ENTERED

MAY 03 2011

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY williams  DEPUTY CLERK
```

1  DAVID M. POITRAS P.C. (CA Bar No. 141309)
   ALEXIS M. McGINNESS (CA Bar No. 241449)
2  JEFFER MANGELS BUTLER & MITCHELL LLP
   1900 Avenue of the Stars, Seventh Floor
3  Los Angeles, California  90067-4308
   Telephone:  (310) 203-8080
4  Facsimile:   (310) 712-8571
   Email:       dpoitras@jmbm.com
5
   Counsel for Westrim, Inc.,
6  Debtor and Debtor-in-Possession

7
                    **UNITED STATES BANKRUPTCY COURT**
8                    **CENTRAL DISTRICT OF CALIFORNIA**
                      **SAN FERNANDO VALLEY DIVISION**
9

10 | In re                                    | CASE NO.    1:11-bk-15313-GM

11 | WESTRIM, INC. dba WESTRIM CRAFTS,        | Chapter 11
   | a Delaware corporation.
12 |
   |                                          |
13 |          Debtor.                         | **ORDER ESTABLISHING BIDDING**
   |                                          | **PROCEDURES FOR THE SALE OF A**
14 |                                          | **SUBSTANTIAL PORTION OF THE**
   |                                          | **ESTATE'S ASSETS**
15 |
   |                                          |
16 |                                          | **Hearing**:
17 |                                          |
   |                                          | Date:   May 3, 2011
18 |                                          | Time:   10:00 a.m.
   |                                          | Ctrm:   Courtroom 303
19 |                                          |         21041 Burbank Blvd.
   |                                          |         Woodland Hills, CA 91367
20

21      The Motion to Establish Procedures for the Sale of a Substantial Portion of the Estate's

22 Assets (the "Bid Procedures Motion"), filed by Westrim, Inc. dba Westrim Crafts, a Delaware

23 corporation, debtor and debtor-in-possession herein ("Debtor"), came on for hearing on May 3,

24 2011 at 10:00 a.m., after notice to the twenty largest creditors holding unsecured claims, all

25 creditors that assert a general security interest in Debtor's assets, parties requesting special notice,

26 the proposed Purchaser and the Office of the United States Trustee.

27

28

PRINTED ON
RECYCLED PAPER
7748800v3

Based on the Motion and the other pleadings on file herein, this Court finds that the notice of the Motion given to creditors and the hearing thereon were appropriate in the particular circumstances of this case pursuant to 11 U.S.C. § 102.

Any objections to the Sales Procedures Motion are overruled to the extent inconsistent with this Order.

Based thereon and good cause appearing therefor,

**IT IS HEREBY ORDERED:**

1. The Motion is hereby approved and granted.

2. The form of Bidding Procedures described in Exhibit 1 attached hereto are approved. Capitalized terms used in this Order and not specifically defined herein shall have the meaning ascribed to such terms in Exhibit 1.

3. A hearing will be held on May 25, 2011 at 10:30 a.m. to consider a motion ("Sale Motion" or "Sale Hearing" as applicable) to be filed by Debtor for approval to sell a substantial portion of its inventory, intellectual property, general intangibles, goodwill, customer lists and certain other assets (the "Assets") to Blue Moon Beads Acquisition Corp. ("Acquisition Corp.") pursuant to a certain Asset Sale and Purchase Agreement (the "Sale Agreement"). Objections to the Sale Motion must be served on Acquisition Corp. at the following address at the same time that they are served on counsel for Debtor:

> Attn: Amit Mehta, Esq.
>
> Paul, Hastings, Janofsky & Walker LLP
>
> 191 North Wacker Drive, Thirtieth Floor
>
> Chicago, Illinois 60606
>
> amitmehta@paulhastings.com

4. The proposed sale to Acquisition Corp. pursuant to the Sale Agreement shall be subject to overbid at the Sale Hearing on the terms and conditions set forth below.

5. In order to bid, unless waived by Debtor, any prospective purchaser must submit the following items to Debtor on or before May 23, 2011 at Noon Pacific Time:

1    •     A letter stating that the bidder's offer is irrevocable until the earlier of (x) two (2) business days after the Assets have been disposed of pursuant to these Bidding Procedures, and (y) thirty (30) days after the Sale Hearing.

•     An executed copy of an asset purchase agreement: (i) acceptable in form to Debtor (the "Overbid Sale Agreement"), (ii) clearly marked to show any changes from the terms of the Acquisition Corp. Sale Agreement, and (iii) on the same or more favorable terms as the Acquisition Corp. Sale Agreement; provided, however, the purchase price in such proposed Overbid Sale Agreement must be at least $257,500 greater than the amount offered by Acquisition Corp.

•     A good faith deposit (the "Good Faith Deposit") in the form of a certified check (or other form acceptable to Debtor in its sole discretion) payable to the order of Debtor (or such other party as Debtor may determine to hold such funds in escrow) in an amount equal to $250,000.

•     Written evidence of a binding commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Debtor in its sole discretion.

•     Only bids on terms that are not conditioned on obtaining financing, further due diligence or other conditions less favorable to the Seller than the Acquisition Corp. will be considered. A bid received from a Qualified Overbidder that includes all of the Required Bid Documents and meets all of the above requirements is a "Qualified Bid." The Acquisition Corp. offer and any overbid by Acquisition Corp. is also a "Qualified Bid."

6.     Debtor will deliver to counsel for Acquisition Corp. a copy of any Overbid Sale Agreement that it receives from a prospective purchaser within 24 hours of its receipt.

7.     Any bidding for the Assets shall be conducted pursuant to the following rules and procedures:

a.     If any Qualified Bids are received, Debtor may conduct an auction (the "Auction") for some or all of the Assets as to which a Qualified Bid has been received. Such Auction shall take place at the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division, 21041 Burbank Boulevard, Woodland Hills, California 91367, Courtroom 303 (the "Bankruptcy Court") on May 25, 2011, commencing at 10:30 a.m. Only a Qualified Overbidder who has submitted a Qualified Bid will be eligible to participate at the

Auction. At such Auction, Acquisition Corp. and Qualified Overbidders will be permitted to increase their bids and Acquisition Corp. will be permitted to bid its Breakup Fee. Based upon the terms of the Qualified Bids received, the level of interest expressed as to the Assets and such other information as Debtor determines is relevant, Debtor, in its reasonable discretion, may conduct an Auction in the manner it determines will result in the highest or otherwise best offer for the Assets including, but not limited to, (i) offering the Assets for bidding as an entire package, in groups of less than all of the Assets, and/or individually, (ii) offering the Assets for bidding in such successive rounds as Debtor determines to be appropriate, and (iii) any such additional procedural rules that it determines to be reasonable under the circumstances for conducting the Auction. Initially, incremental overbids will be set at $75,000.

   b. Upon conclusion of an Auction, Debtor shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale and (ii) identify the highest and otherwise best offer (the "<u>Successful Bid</u>"). At the Sale Hearing, Debtor shall present to the Court for approval the Successful Bid and any backup bids.

   c. Following a Sale Hearing approving the sale of one or more Assets to a Successful Bidder, if such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, (a) it will forfeit its Good Faith Deposit to Debtor and Debtor may pursue any and all of its other options at law and in equity with respect to such breach (except as set forth in the Acquisition Corp. Sale Agreement) and (b) the next highest or otherwise best Qualified Bid, as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid and Debtor shall be authorized to effectuate such sale without further order of the Bankruptcy Court or (c) Debtor may reschedule at a later date and time another auction for any or all of the Assets.

   8. Debtor is authorized and directed to pay to Acquisition Corp. the Breakup Fee in accordancewith the terms set forth in the Sale Agreement and the Bidding Procedures. The Breakup Fee was the product of arms-length negotiations and is not in amount that is substantial enough to have a chilling effect on other prospective bidders. The Breakup Fee has helped to

1  preserve the value of the estate by inducing Acquisition Corp. to serve as Stalking Horse and
2  exposing Acquisition Corp.'s offer to overbid. The Breakup Fee is entitled to administrative
3  expense claim status under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and
4  (excepting only the Carve-Out for Debtor's professionals) shall not be subordinate to any other
5  administrative expense claim against Debtor, including under any debtor-in-possession financing or
6  cash collateral order.

7  9.    Acquisition Corp. is authorized to offset, on behalf of Licensee (as defined in the Bid
8  Procedures Motion), any amount that it owes to Debtor pursuant to the Exclusive License against
9  any of the Breakup Fee due from Debtor without further order of this Court.

10  10.   This Order shall take effect immediately upon entry.

11  11.   This Court retains exclusive jurisdiction to resolve any dispute arising from or
12  relating to this Order.

# # #

DATED: May 3, 2011

*[signature]*
United States Bankruptcy Judge

# EXHIBIT 1

## **Bidding Procedures**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the prospective sale (the "Sale") of the following personal property of Westrim, Inc. ("Seller"):

(a) Seller's legal and beneficial right, title and interest in and to the following to the extent used in, or related to, the Business:

(i) all Inventory, the skus for which are set forth on Exhibit A;

(ii) all executory Contracts (other than Rejected Contracts) identified by the parties for assignment to Purchaser on Schedule 2.1(a)(ii) (collectively, the "Assumed Contracts"), which may include if related to the Business: (A) the License Agreement and other license agreements to which Seller is a party and that provide Seller with rights to technology, products and/or trademarks, or by which Seller grants rights to third parties for Intellectual Property, (B) all purchase orders, Contracts or other commitments of Seller to suppliers and vendors of goods and services for materials, supplies or other items, specifically excluding the Vendor Terms Agreement and the Supplier Terms Agreement, and any side letters related thereto, (C) all sales orders, Contracts or other similar commitments of Seller, (D) all confidentiality agreements, non-competition, assignment of inventions and similar agreements to which Seller is a party, (E) all rights of Seller to the rebates, indemnities, warranties and licenses received from lessors, manufacturers and sellers of the Purchased Assets and (F) other executory Contracts and unexpired leases and each other Contract or arrangement designated as an Assumed Contract by Purchaser; provided that the Purchaser shall acquire all assets, deposits and prepaid expenses relating to any Assumed Contract;

(iii) copies of all financial books, accounting records, files, lists, publications, and other records and data of Seller related to the Business, regardless of the medium on which such information is stored or maintained (the "Records");

(iv) all goodwill of Seller relating to the Business;

(v) all customer lists used by the Business;

(vi) as used in the Business, all registered trademarks or service marks and all trademark and service mark applications, all common law trademarks, trade names, trade dress and logos, all copyrights (including copyrighted content on internet sites to the extent related to the Business), all domain names, websites, and extensions thereof, all know-how, trade secrets and other confidential information, inventions, ideas, discoveries, patent applications and granted patents (including any and all continuations, continuations-in-part, additions and divisions thereof, and any and all patents issuing from the patent applications, and any reissues, reexaminations, renewals, extensions, and substitutions of any of the

patents), and all industrial designs, owned by Seller or any Affiliate of Seller in the Business (the "Intellectual Property"), and any registrations and applications therefor, and all databases, design databases, schematics and data collections and all rights therein owned by Seller or any Affiliate of Seller;

(vii) all claims, rights and causes of action relating to the Purchased Assets; and

(viii) after completion of the services under the Transition Services Agreement, the telephone and facsimile numbers currently used in connection with the Business.

(b) The Purchased Assets shall not include any of Seller's right, title or interest in or to any of the other assets of the Seller, including, without limitation, the following assets (collectively, the "Excluded Assets"):

(i) any of Seller's Cash on hand, and all bank accounts and lockbox arrangements benefiting the Business;

(ii) any Rejected Contracts and all Contracts and agreements that are rejected or are subject to a motion to reject by Seller in Bankruptcy Court;

(iii) any corporate minute books, organizational documents, stock ledgers and other corporate books and records, any original accounting records relating to the Business or any other business of Seller or its Affiliates;

(iv) all of Seller's deposits with carriers, lessors and other vendors (except with respect to any Assumed Contracts);

(v) all claims and causes of action under Sections 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, and any other claims or causes of action belonging to Seller or its estate (collectively, "Avoidance Actions"), other than those relating to the Purchased Assets;

(vi) all Seller Plans (except to the extent set forth on Schedule 2.1(a)(iii));

(vii) any refunds and claims for refunds of Taxes accrued or accruing as of the Closing Date;

(viii) all accounts receivable, whether or not relating to the Business, and all notes and other receivables;

(ix) all insurance contracts and any rights or claims thereunder, whether or not pertaining to the Business; and

2

      (x) Seller's rights under this Agreement and the Ancillary Agreements.

(collectively, the "<u>Assets</u>").

   Seller will seek entry of an order, among other things, authorizing and approving the Sale to Blue Moon Beads Acquisition Corp. ("<u>Acquisition Corp.</u>") or to a Qualified Overbidder (as hereinafter defined) as Seller, in the exercise of its reasonable business judgment may determine to have made the highest or otherwise best offer to purchase the respective Assets (the "<u>Successful Bidder</u>").

## The Bidding Process

   Seller shall (i) determine whether any person is a Qualified Overbidder, (ii) coordinate the efforts of Qualified Overbidders in conducting their respective due diligence investigations regarding the Assets, (iii) receive offers from Qualified Overbidders, and (iv) negotiate any offer made to purchase the Assets (collectively, the "<u>Bidding Process</u>"). Any person who wishes to participate in the Bidding Process must be a Qualified Overbidder. Neither Seller nor its representatives shall be obligated to furnish any information of any kind whatsoever related to the Assets to any person who is not a Qualified Overbidder. Seller shall have the right to adopt such other rules for the Bidding Process which, in its reasonable judgment, will better promote the goals of the Bidding Process and which are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

## Participation-Bid Requirements

   Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each person (a "<u>Potential Bidder</u>") must deliver (unless previously delivered) to Seller the following documents (the "<u>Required Bid Documents</u>"), unless Seller waives in writing any/all of these requirements:

    (a) An executed confidentiality agreement in form and substance satisfactory to Seller;

    (b) Current financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current financial statements or other financial information of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure acceptable to Seller and its advisors, demonstrating such Potential Bidder's ability to close the proposed transaction;

    (c) A letter stating that any offer put forth by such bidder shall be irrevocable until the earlier of (x) two (2) business days after the Assets have been disposed of pursuant to these Bidding Procedures, and (y) thirty (30) days after the Sale Hearing;

    (d) An executed copy of an asset purchase agreement: (i) acceptable in form to Seller (the "<u>Overbid Sale Agreement</u>"), (ii) clearly marked to show any changes from the terms of the proposed Asset Sale and Purchase Agreement by and among Debtor and Blue Moon Beads Acquisition Corp., as purchaser, dated May 3, 2011 (the "<u>Acquisition Corp. Sale</u>

Agreement);" and (iii) on the same or more favorable terms as the Acquisition Corp. Sale Agreement; provided, however, the purchase price in such proposed Overbid Sale Agreement must be at least $257,500 (the Breakup Fee plus $75,000);

(e)    A good faith deposit (the "Good Faith Deposit") in the form of a certified check (or other form acceptable to Seller in its sole discretion) payable to the order of Seller (or such other party as Seller may determine to hold such funds in escrow) in an amount equal to $250,000; and

(f)    Written evidence of a binding commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Seller in its sole discretion.

Seller will consider a bid only if the bid is on terms that are not conditioned on obtaining financing, due diligence or other conditions less favorable to the Seller than those set forth in the Acquisition Sale Agreement.

A Qualified Overbidder is a Potential Bidder that delivers the documents described in subparagraphs (a), (b), (c), (d), (e) and (f) above, whose financial information demonstrates the financial capability of the Potential Bidder to consummate the Sale, and that Seller determines is reasonably likely (based on the availability of financing, experience and other considerations) to consummate the Sale if selected as the Successful Bidder.

Within three (3) business days after a Potential Bidder delivers all of the materials required by subparagraphs (a), (b), (c), (d), (e) and (f) above, Seller shall determine, and shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Overbidder.

The Acquisition Corp. offer set forth in the Acquisition Corp. Sale Agreement is also a "Qualified Bid" herein. Seller will deliver to Acquisition Corp. a copy of any materials described in subparagraphs (d) and (f) above that it receives from a Potential Bidder within 24 hours of its receipt.

## Bid Protection

Acquisition Corp. shall be entitled to be paid (i) a $82,500 termination fee and be reimbursed for up to $100,000 for out-of-pocket expenses (collectively, the "Breakup Fee") if a higher or otherwise better offer from another bidder is accepted or the Seller materially breaches the Acquisition Corp. Sale Agreement or (ii) up to $100,000 for out-of-pocket expenses if Acquisition Corp. terminates the Acquisition Corp. Sale Agreement pursuant to Section 15(e)(i) or Section 15.1(f) of the Acquisition Corp. Sale Agreement. The Debtor's obligations set forth in this section shall be entitled to administrative expense claim status under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and (excepting only the Carve-Out for Debtor's professionals) shall not be subordinate to any other administrative expense claim against Debtor, including under any debtor-in-possession financing or cash collateral order.

### Due Diligence

Seller may afford each Potential Bidder or Qualified Overbidder due diligence access to the Assets sought to be acquired. Seller will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access for such bidders. Seller shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined herein). Neither Seller nor any of its affiliates (or any of their respective representatives) are obligated to furnish any information relating to the Assets to any person except to a Potential Bidder or Qualified Overbidder who makes an acceptable preliminary proposal. Bidders are advised to exercise their own discretion before relying on any information regarding the Assets provided by anyone other than Seller or its representatives.

### Bid Deadline

A Qualified Overbidder that desires to make a bid shall deliver a written copy of its bid to Jeffer Mangels Butler & Mitchell LLP, 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067, to the attention of David M. Poitras P.C., Facsimile: (310) 712-8571; Email: dpoitras@jmbm.com, **on or before Noon Pacific Time on May 23, 2011.** Seller may extend such deadline in its sole discretion (such deadline, including such extension, the "Bid Deadline"). In addition to the above-referenced extension, Seller may extend the Bid Deadline once or successively, but it is not obligated to do so. Notwithstanding the foregoing, Seller shall not extend the deadline to any date that is later than May 24, 2011.

### "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Seller, its agents or its bankruptcy estate except to the extent set forth in the Overbid Sale Agreement of the Successful Bidder as accepted by Seller. Except as otherwise provided in the Acquisition Corp. Sale Agreement or an Overbid Sale Agreement acceptable to Seller, all Seller's right, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with Sections 363 and 365 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the Sale of the Assets.

Each bidder shall be deemed to acknowledge and represent it has had an opportunity to inspect and examine the Assets and to conduct any and all due diligence regarding the Assets prior to making its offer; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the Acquisition Corp. Sale Agreement or the Overbid Sale Agreement.

7748144v3

### Auction

After the Bid Deadline, Seller may conduct an auction (the "Auction") for some or all of the Assets as to which a Qualified Bid has been received. Such Auction shall take place at the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division, 21041 Burbank Boulevard, Woodland Hills, California, Courtroom 303 (the "Bankruptcy Court") on May 25, 2011, commencing at 10:30 a.m. Only a Qualified Overbidder who has submitted a Qualified Bid will be eligible to participate at the Auction. At such Auction, Acquisition Corp. and Qualified Overbidders (and Acquisition Corp.) will be permitted to increase their bids and Acquisition Corp. shall be entitled to bid the Breakup Fee. Based upon the terms of the Qualified Bids received, the level of interest expressed as to the Assets and such other information as Seller determines is relevant, Seller, after reasonable efforts to consult with interested parties, in its reasonable discretion, may conduct an Auction in the manner it determines will result in the highest or otherwise best offer for the Assets including, but not limited to, (i) offering the Assets for bidding as an entire package, in groups of less than all of the Assets, and/or individually, (ii) offering the Assets for bidding in such successive rounds as Seller determines to be appropriate, and (iii) any such additional procedural rules that it determines to be reasonable under the circumstances for conducting the Auction that are not inconsistent with any of the provisions of the Bankruptcy Code, any Bankruptcy Court Order, or these Bidding Procedures.

Upon conclusion of an Auction or, if Seller determines not to hold an Auction, then promptly following the Bid Deadline, Seller shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale and (ii) identify the highest and otherwise best offer (the "Successful Bid"). At the Sale Hearing, Seller shall present to the Bankruptcy Court for approval the Successful Bid and any backup bids. Seller may adopt rules for the bidding process that are not inconsistent with any of the provisions of the Bankruptcy Code, any Bankruptcy Court Order, or these Bidding Procedures.

### Acceptance of Qualified Bids

Seller presently intends to sell the Assets to Acquisition Corp. or the highest or otherwise best Qualified Overbidder. Seller's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute Sellers' acceptance of such bid. Seller will be deemed to have accepted a bid only when the bid has been approved by an order of the Bankruptcy Court.

### Sale Hearing

The Sale Hearing, if required, shall take place at the Bankruptcy Court immediately following the Auction. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date of a Sale Hearing. At such Sale Hearing, Seller shall present the Successful Bid to the Bankruptcy Court for approval.

7748144v3

Following a Sale Hearing approving the sale of one or more Assets to a Successful Bidder, if such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, (a) it will forfeit its Good Faith Deposit to Seller and Seller may pursue any and all of its options at law and in equity with respect to such breach and (b) the next highest or otherwise best Qualified Bid, as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid and Seller shall be authorized to effectuate such sale without further order of the Bankruptcy Court or (c) Seller shall reschedule at a later date and time another auction for any or both properties or assets.

### Return of Good Faith Deposit

Good Faith Deposits of all Qualified Overbidders shall be held in escrow until the earlier of (x) three (3) business days after all Assets upon which the bidder is bidding have been disposed of pursuant to these Bidding Procedures or (y) thirty-one (31) days after the Sale Hearing.

### Modifications

Seller may (a) determine, in its business judgment, which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before the entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid (other than the Acquisition Corp offer set forth in the Acquisition Corp. Sale Agreement) that, in Seller's reasonable discretion is (i) inadequate or insufficient, (ii) not in conformity with the conditions of sale, or (iii) contrary to the best interests of Seller, its estate and/or its creditors. At or before the Sale Hearing, Seller may impose such other terms and conditions as it may determine to be in the best interest of Seller's bankruptcy estate, its creditors and/or other parties in interest that are not inconsistent with any of the provisions of the Bankruptcy Code, any Bankruptcy Court Order, or these Bidding Procedures.

7748144v3

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as ***ORDER ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF A SUBSTANTIAL PORTION OF THE ESTATE'S ASSETS*** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***May 3, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**SERVED BY OVERNIGHT MAIL**

Honorable Geraldine Mund
United States Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***May 3, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 3, 2011 | Monica Clemens | /s/ Monica Clemens |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010* **F 9013-3.1.PROOF.SERVICE**

*ADDITIONAL SERVICE INFORMATION*

III. <u>SERVED BY EMAIL</u>

<u>Agent for Bridge Lenders</u>
Ron Cooper
11222 Brooks Road
Windsor, CA 95492
Email: ron.cooper@creativityinc.com

<u>Attorneys For Acquisition Corp.</u>
Paul Hastings Janofsky & Walker LLP
Amit Mehta
191 North Wacker Drive, 30th Fl
Chicago, IL 60606
Email: amitmehta@paulhastings.com

<u>Attorneys For Acquisition Corp.</u>
Paul Hastings Janofsky & Walker LLP
Jennifer B. Hildebrandt
515 South Flower St, 25th Fl
Los Angeles, CA 90071
Email: jenniferhildebrandt@paulhastings.com

<u>Attorneys For Newstar Business Cred</u>
Hunton & Williams LLP
Gregory G. Hesse
1445 Ross Avenue, Ste 3700
Dallas, TX 75202
Email: ghesse@hunton.com

Margaux S. Ross
Office of the United States Trustee
21051 Warner Center Lane, Ste 115
Woodland Hills CA 91367
Email: margaux.ross@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                                          **F 9013-3.1.PROOF.SERVICE**

**NOTE TO USERS OF THIS FORM**:
1) Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) <u>***ORDER ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF A SUBSTANTIAL PORTION OF THE ESTATE'S ASSETS***</u> was entered on the date indicated as ○Entered○ on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of ***May 3, 2011***, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Alexis M McGinness    amm@jmbm.com, cb7@jmbm.com
- David M Poitras    dpoitras@jmbm.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an ○Entered○ stamp, the party lodging the judgment or order will serve a complete copy bearing an ○Entered○ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☒ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*    **F 9021-1.1.NOTICE.ENTERED.ORDER**

*ADDITIONAL SERVICE INFORMATION*

III. <u>SERVED BY EMAIL</u>

<u>Agent for Bridge Lenders</u>
Ron Cooper
11222 Brooks Road
Windsor, CA 95492
Email: ron.cooper@creativityinc.com

<u>Attorneys For Acquisition Corp.</u>
Paul Hastings Janofsky & Walker LLP
Jennifer B. Hildebrandt
515 South Flower St, 25th Fl
Los Angeles, CA 90071
Email: jenniferhildebrandt@paulhastings.com

<u>Attorneys For Acquisition Corp.</u>
Paul Hastings Janofsky & Walker LLP
Amit Mehta
191 North Wacker Drive, 30th Fl
Chicago, IL 60606
Email: amitmehta@paulhastings.com

<u>Attorneys For Newstar Business Cred</u>
Hunton & Williams LLP
Gregory G. Hesse
1445 Ross Avenue, Ste 3700
Dallas, TX 75202
Email: ghesse@hunton.com

Margaux S. Ross
Office of the United States Trustee
21051 Warner Center Lane, Ste 115
Woodland Hills CA 91367
Email: margaux.ross@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010* **F 9021-1.1.NOTICE.ENTERED.ORDER**