DAVID M. POITRAS P.C. (CA Bar No. 141309)
ALEXIS M. McGINNESS (CA Bar No. 241449)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 712-8571
Email: dpoitras@jmbm.com

Counsel for Westrim, Inc.,
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

In re

WESTRIM, INC. dba WESTRIM CRAFTS, a Delaware corporation.

Debtor.

CASE NO.   1:11-bk-15313-GM

Chapter 11

SECOND SUPPLEMENT TO DEBTOR'S MOTION FOR ORDER AUTHORIZING: (A) SALE OF CERTAIN ASSETS OF THE ESTATE, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) RELATED RELIEF AND (2) MOTION TO RECONSIDER SALE PROCEDURES ORDER

*[TRANSITION SERVICES AGREEMENT]*

**Continued Hearing:**

Date:   June 2, 2011
Time:   9:00 a.m.
Ctrm:   Courtroom 1339
        255 East Temple Street,
        Los Angeles, California

Judge:  Hon. Geraldine Mund

PRINTED ON
RECYCLED PAPER
7821630v1

Westrim Inc. dba Westrim Crafts, debtor and debtor in possession in the above-captioned case (the "Debtor") hereby submits this second supplement to *Debtor's Motion for Order (A) Authorizing Sale of Certain Assts, Free and Clear of All Liens, Claims, Encumbrances, and Interests; (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Related Relief* filed herein on May 4, 2011 as Docket No. 22 (the "Sale Motion").

The Court orally granted the Sale Motion on May 25, 2011. A written order granting the motion has not yet been entered by the Court as of the date of this filing.

As contemplated by the Asset Purchase and Sale Agreement, attached as Exhibit 1 to the Sale Motion (the "Sale Agreement"), at the time of the consummation of the transaction contemplated therein, the Debtor and Buyer seek to enter into a Transition Service Agreement. Pursuant to the [proposed] Sale Order and in conjunction with the Sale Motion, the Debtor seeks this Court's approval of, and authorizations to enter into, a Transition Service Agreement in a form substantially similar to that attached hereto as Exhibit 5 (the "TSA"). The Budget attached as Exhibit B thereto has not been approved by the Buyer and remains subject to change.

The Court will hold a hearing on June 2, 2011 at 9:00 a.m. to consider approval of the TSA.

DATED: May 31, 2011

JEFFER MANGELS BUTLER & MITCHELL LLP

By: /s/ Alexis M. McGinness
David M. Poitras
Alexis M. McGinness
Attorneys for Debtor Westrim Inc. dba Westrim Crafts

# EXHIBIT 5

# Transition Services Agreement

# TRANSITION SERVICES AGREEMENT

## BY AND AMONG

### WESTRIM, INC.
As Provider

### AND

### BLUE MOON BEADS ACQUISITION CORP.
As Customer

### June 3, 2011

This Transition Services Agreement (the "**Services Agreement**") is dated as of June 3, 2011 (the "**Commencement Date**"), by and between Westrim, Inc., a Delaware corporation (the "**Provider**"), and Blue Moon Beads Acquisition Corp., a Delaware corporation ("**Customer**"). Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Purchase Agreement (as defined below).

## PREAMBLE

A.   Pursuant to that certain Asset Purchase and Sale Agreement (the "**Purchase Agreement**"), dated as of May 2, 2011, Provider and Customer completed a sale of the Purchased Assets from Provider to Customer as of the Commencement Date.

B.   Customer wishes to engage Provider to provide continuing on-going transition services for a limited period of time to allow the Purchased Assets to be efficiently transitioned from Provider to Customer.

C.   This Services Agreement provides the terms under which Provider shall provide such services to Customer.

Section 1   Term. The term ("**Term**") of this Services Agreement shall be for the period beginning on the Commencement Date and ending on July 15, 2011; provided, however, that Customer shall have the option to extend the Term until July 31, 2011 by delivering written notice of such extension to Provider on or prior to July 1, 2011.

Section 2   Services. The categories of services to be provided by Provider pursuant to this Services Agreement (the "**Services**") are set forth on **Exhibit A** attached hereto. In addition, Provider shall use commercially reasonable efforts to provide Customer with other transitional assistance and services as Customer may reasonably request in writing on reasonable terms to be agreed to between the parties in good faith. The Services shall be performed by Provider in a manner substantially similar to that manner in which such Services were performed immediately prior to the Commencement Date and by the current applicable employees of Provider who are listed on the Budget

(as defined below and as may be amended from time to time as provided herein) (such employees, the "**Transition Employees**"), unless Customer should otherwise agree in writing, and in such event such person shall be a "Transition Employee" hereunder; provided, however, that in the event that a Transition Employee terminates his or her employment with Provider (a "**Departing Employee**") during the Term, Provider shall notify Customer of such termination and, if approved by Customer, hire a temporary employee to replace such Departing Employee. The costs of hiring any such temporary employee shall be included in the costs of the Services hereunder.

Section 3    Costs of Services; Billing Procedure; Payment Terms.

(a) **Exhibit B** attached hereto sets forth a budget for the provision of the Services by Provider hereunder for each weekly period occurring during the Term (as amended from time to time in accordance with the terms hereof, the "**Budget**"), which includes the weekly budget for the general categories of Services provided hereunder and the weekly salary for each Transition Employee. The Services provided hereunder shall be provided by Provider to Customer in a manner consistent with the Budget; provided, however, that the parties may amend the Budget from time to time during the Term upon mutual written agreement to add or remove Services (which may include discontinuing the use of a particular Transition Employee) and, in the case of any such amendment, the Services shall be provided in accordance with the Budget as so amended. Customer shall pay for the costs of the Services incurred hereunder based on the actual out-of-pocket costs incurred for each particular Service. Customer may carry insurance on all inventory and shall bear any and all costs for damage or destruction of such inventory, except to the extent that any such damage or destruction is caused by the gross negligence or willful misconduct of Provider or any of its employees, representatives or agents.

(b) In order to fund the Services provided hereunder for each weekly period during the Term, prior to the beginning of each such weekly period, Customer shall deposit, by wire transfer of immediately available funds to an account designated by Provider (the "**Funding Account**"), a cash amount (the "**Weekly Funding Amount**") equal to the anticipated costs and expenses of the Services for such upcoming weekly period as set forth in the Budget; provided, however, that Weekly Funding Amount for any weekly period shall be (x) increased by the amount that the actual costs and expenses of the Services for the prior weekly period exceeded amount available in the Funding Account and (y) decreased by any excess cash available in the Funding Account that is not required to be used to pay for Services rendered in prior periods. At the end of the Term, Provider shall distribute to Customer any excess cash available in the Funding Account that is not required to pay for Services rendered hereunder. Provider shall use the Weekly Funding Amount solely to fund the costs and expenses of the Services hereunder and for no other purpose.

Section 4    Transition Employees.

(a)    Except as otherwise provided herein, during the Term, Provider agrees to continue to employ the Transition Employees, in their current positions as of the Commencement Date to provide the applicable Services to Customer

as set forth herein. At any time during the Term, Customer may (but shall not be required to) offer employment to any Transition Employee with Customer or hire any Transition Employee as an independent contractor, and, in such event, Provider shall release such Transition Employee from his or her employment with Provider and permit Customer to hire such Transition Employee.

(b) Notwithstanding anything contained in this Service Agreement to the contrary, Customer shall have no liability or obligation to any Transition Employee, all of whom remain employees of Provider. Provider shall remain solely responsible for the satisfaction and payment of all liabilities and obligations owing to any and all of the Transition Employees, and shall be solely responsible for any failure to comply with any laws, rules or regulations relating to employment, equal employment opportunity, nondiscrimination, immigration, wages, hours, benefits, collective bargaining, the payment of social security and similar taxes, occupational safety, health and plant closings, or any similar law, rule and regulation, as may relate or apply to the Transition Employees, including, without limitation, any liabilities or obligations arising out of a failure to comply with, or otherwise satisfy obligations under, Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code or the WARN Act.

(c) Customer and Provider acknowledge and agree that the Transition Employees shall be used solely for purposes of (i) providing the Services hereunder and (ii) the Approved Activities (as defined below), so long as a Transition Employee's participation in any such Approved Activities does not interfere with such Transition Employee's ability to provide the applicable Services hereunder.

Section 5    Office/Warehouse Space; Office Furniture.

(a) In addition to the Services, Customer shall have the right to have employees of Customer use and occupy facilities located at 7855 Hayvenhurst Avenue, Van Nuys, CA 94106 (the "**Leased Space**") for no additional fee to Provider (it being understood and agreed that such use and occupancy of the Leased Space by Customer shall not interfere with Provider's ability to provide the Services hereunder); provided, however, that Provider reserves the right to use and occupy the Leased Space solely for purposes of (i) providing the Services hereunder simultaneously with Customer and its employees during the Term and (ii) liquidating certain assets, fixtures and equipment not included in the Purchased Assets (the "**Approved Activities**"), so long as such Approved Activities do not (x) result in any additional costs or expenses to Customer or (y) otherwise interfere with the provision of the Services hereunder or Customer's use of the Leased Space as provided herein. Provider acknowledges and agrees that even though Customer has agreed to pay such rent as is necessary for the landlord of the Leased Space to permit Customer and Provider to continue to use the Leased Space during the Term for purposes of receiving and providing the Services hereunder, Customer shall have no obligation to continue making any such rent payments with respect to any period following the expiration or termination of the Term. After the Term, Customer's right to use and occupy the Leased Space shall automatically terminate.

(b)  In addition to the Services, Customer shall have the right to use all machinery, fixtures, office furniture, furnishings, office machines and equipment, communications systems, individual computer workstation, monitors, keyboards, and associated equipment and other office assets of Provider (collectively, the "**Operating Assets**") that were used in Provider's operation of the Business prior to the execution of the Purchase Agreement for the Term at no additional fee; provided, however, that Customer acknowledges and agrees that the equipment set forth on **Exhibit C** hereto is leased by Provider and that the leasing costs of such leased equipment for the Term are included in the Budget. Provider represents to Customer that it has, and hereby agrees during the Term to keep and maintain, such Operating Assets in the Leased Space as are necessary for the provision of the Services hereunder.

Section 6    Early Termination of Individual Services. The parties may terminate any individual Service provided hereunder at any time upon mutual written agreement and any such termination shall be reflected in an amendment to the Budget under Section 3(a).

Section 7    Warranties; Standard of Care.

(a) In providing the Services set forth in this Services Agreement, Provider shall utilize the same standard of care it utilizes in operating its own business.

(b) Provider shall make all filings with, and obtain all approvals from, the Bankruptcy Court that are required to permit Provider to render the Services to Customer and perform all of its other obligations hereunder.

(c) Provider shall obtain all necessary third party consents to perform the Services hereunder.

Section 8    No Personal Liability. No officer, director or shareholder of a party and no other agent providing services or goods to or on behalf of the party shall be personally obligated in any respect or have any personal liability for any of the obligations and agreements of the other party under this Services Agreement, including without limitation obligations or liabilities for which the other party may be responsible as a result of any negligent act or omission, other than those obligations or liabilities arising out of or connected to a breach of this Services Agreement by either party or through the gross negligence or the willful misconduct of a party, its employees or agents.

Section 9  .  Independent Relationship. It is mutually understood and agreed that the relationship between the parties under this Services Agreement is not an employment relationship and that Provider is acting and performing services at all times as an independent contractor. Neither party shall have nor exercise any control or direction over the methods by which the other's employees, subcontractors or other agents perform their services or obligations under this Services Agreement. Each party shall be solely responsible for and shall be in compliance with all state and federal laws pertaining to employment taxes, income tax withholding, unemployment compensation

contributions, and other employment related statutes regarding their respective employees, agents and servants. Neither Provider nor its agents or employees, shall have any power to bind or obligate Customer contractually for any purpose whatsoever. Nothing in this Services Agreement shall be deemed to make either party the agent of the other party or to create a partnership or joint venture between the parties for any purpose whatsoever.

Section 10    Notices. Any notice, request, demand or other communication required or permitted hereunder shall be in writing and shall be made and deemed to have been given in accordance with the Purchase Agreement.

Section 11    Entire Agreement. This Services Agreement, together with the Purchase Agreement and all exhibits thereto, supersedes all prior agreements between the parties with respect to its subject matter and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter. This Services Agreement may not be amended except by a written agreement executed by the party to be charged with the amendment.

Section 12    Disputes.

(a) Any and all disputes arising under, out of, or in relation to this Services Agreement, its formation, performance or termination (a "**Dispute**") shall initially be referred to Michael Hill, on behalf of Customer, and Chris McLain, on behalf of Provider, (such representatives, the "**Designated Representatives**") who shall meet and attempt to resolve the Dispute.

(b) If the Designated Representatives cannot resolve the Dispute within five (5) days of referral, either party may institute proceedings in accordance with this Section 12.

(c) The dispute resolution procedure set forth in Sections 12(a) and (b) is mandatory, and neither party shall institute legal proceedings until it has been exhausted.

(d) Disputes that have not been resolved in accordance with the above shall be finally and conclusively determined by the Bankruptcy Court. Both parties further consent, submit to, and agree that venue in any such suit, action, proceeding, or claim is proper in such court and further expressly waives any and all personal rights under applicable law or in equity to object to the jurisdiction and venue of said court.

(e) Neither party shall make any public announcement or press release concerning any Dispute without the prior written consent of the other party, unless as required by law or government agency.

\* \* \* \*

In witness thereof, Provider and Customer have entered into this Services Agreement as of the date set forth above.

**Provider:**             **Westrim, Inc.,**
                          a Delaware corporation


                          By:_____
                          Name: Ronald B. Cooper
                          Title: President and Chief Executive Officer



**Customer:**             **Blue Moon Beads Acquisition Corp.,**
                          a Delaware corporation


                          By:_____
                          Name:_____
                          Title:_____

## Exhibit A: Services

| Service | | |
|---|---|---|
| *Transition Service – Fulfillment of Customer Orders/Shipping* | | |
| *Transition Service – Organizing Warehouse and Preparing Inventory for Shipping to Utah* | | |
| *Transition Service – Re-work or Modify Inventory for Shipping* | | |
| *Transition Service – Accounting* | | |
| *Transition Service – Order Entry* | | |
| *Transition Service – Customer Service* | | |

## Exhibit B

## Weekly Budget for Services

Transition Services Agreement
Schedule B
Budget

| Week Ending: | 12-Jun | 19-Jun | 26-Jun | 3-Jul | 10-Jul | 17-Jul | 24-Jul | 31-Jul | Total: |
|---|---|---|---|---|---|---|---|---|---|
| **TSA Expenses** | | | | | | | | | |
| Employee (Payroll, Benefits) | 125,000 | $- | 74,000 | $- | 121,000 | | 68,000 | 34,000 | 422,000 |
| Facilities (Rent, Utilities, Taxes, Insurance) | TBD | $- | 25,000 | $- | TBD | | 25,000 | $- | 50,000 |
| Operating Expenses | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 160,000 |
| **Total Expenses** | **145,000** | **20,000** | **119,000** | **20,000** | **141,000** | **20,000** | **113,000** | **54,000** | **632,000** |

Subject to change.

Exhibit - 5 - 11

**Exhibit C**
**List of Leased Equipment**

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1900 Avenue of the Stars, Seventh Floor, Los Angeles, California 90067-4308

A true and correct copy of the foregoing document described as *Notice Of Intent To Assume And Assign Executory Contracts Pursuant To Debtor's Motion For Order Authorizing: (A) Sale Of Certain Assets Of The Estate, Free And Clear Of All Liens, Claims, Encumbrances And Interests; (B) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (C) Related Relief* will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On *May 31, 2011,* I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- John H Dolan    jdolan@hunton.com
- Alexis M McGinness    amm@jmbm.com, vr@jmbm.com;fc3@jmbm.com
- David M Poitras    dpoitras@jmbm.com
- Daniel H Reiss    dhr@lnbyb.com
- S Margaux Ross    margaux.ross@usdoj.gov
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On , I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
*Served By Overnight Mail:*

Hon. Geraldine Mund, United States Bankruptcy Court; 21041 Burbank Boulevard, Suite 342, Woodland Hills, CA 91367

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *May 31, 2011,* I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 31, 2011 | Monica Clemens | *[signature]* |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

F 9013-3.1.PROOF.SERVICE

### III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL

### SERVE BY EMAIL:

<u>Agent for Bridge Lenders</u>
Ron Cooper
11222 Brooks Road
Windsor, CA 95492
Email: ron.cooper@creativityinc.com

<u>Attorneys For Acquisition Corp.</u>
Paul Hastings Janofsky & Walker LLP
Jennifer B. Hildebrandt
515 South Flower St, 25th Fl
Los Angeles, CA 90071
Email: jenniferhildebrandt@paulhastings.com

Margaux S. Ross
Office of the United States Trustee
21051 Warner Center Lane, Ste 115
Woodland Hills CA 91367
Email: margaux.ross@usdoj.gov

<u>Attorneys For Acquisition Corp.</u>
Paul Hastings Janofsky & Walker LLP
Amit Mehta
191 North Wacker Drive, 30th Fl
Chicago, IL 60606
Email: amitmehta@paulhastings.com

<u>Attorneys For Newstar Business Cred</u>
Hunton & Williams LLP
Gregory G. Hesse
1445 Ross Avenue, Ste 3700
Dallas, TX 75202
Email: ghesse@hunton.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

F 9013-3.1.PROOF.SERVICE