1  DAVID M. POITRAS P.C. (CA Bar No. 141309)
   ALEXIS M. McGINNESS (CA Bar No. 241449)
2  JEFFER MANGELS BUTLER & MITCHELL LLP
   1900 Avenue of the Stars, Seventh Floor
3  Los Angeles, California  90067-4308
   Telephone:    (310) 203-8080
4  Facsimile:    (310) 712-8571
   Email:        dpoitras@jmbm.com
5
6  Counsel for Westrim, Inc.,
   Debtor and Debtor-in-Possession
7

8                UNITED STATES BANKRUPTCY COURT
                 CENTRAL DISTRICT OF CALIFORNIA
9                 SAN FERNANDO VALLEY DIVISION

10 | In re | CASE NO.    1:11-bk-15313-GM |
11 | WESTRIM, INC. dba WESTRIM CRAFTS, a | Chapter 11 |
12 | Delaware corporation. | |
   | | DEBTOR'S EX PARTE APPLICATION FOR |
13 | Debtor. | AN ORDER SHORTENING TIME OF |
   | | HEARING FOR: |
14 | | (1) DEBTOR'S MOTION FOR ORDER |
   | | AUTHORIZING:  (A) SALE OF CERTAIN |
15 | | ASSETS OF THE ESTATE, FREE AND |
   | | CLEAR OF ALL LIENS, CLAIMS, |
16 | | ENCUMBRANCES AND INTERESTS; |
   | | (B) DISPOSAL OF CERTAIN |
17 | | ENVIRONMENTAL AND CONSUMER NON- |
   | | COMPLIANT PRODUCTS; AND (C) |
18 | | ABANDONMENT OF CERTAIN PERSONAL |
   | | PROPERTY; AND |
19 | | (2) DEBTOR'S MOTION TO CONTINUE |
   | | FINANCING PURSUANT TO THE FINAL |
20 | | ORDER (A) AUTHORIZING POSTPETITION |
   | | FINANCING AND GRANTING SECURITY |
21 | | INTERESTS AND SUPERPRIORITY |
   | | ADMINISTRATIVE EXPENSE STATUS |
22 | | PURSUANT TO 11 U.S.C. §§ 361, 362, AND |
   | | 364; (B) AUTHORIZING USE OF CASH |
23 | | COLLATERAL; (C) MODIFYING THE |
   | | AUTOMATIC STAY PURSUANT TO 11 |
24 | | U.S.C. § 362; (D) GRANTING ADEQUATE |
   | | PROTECTION PURSUANT TO 11 U.S.C. §§ |
25 | | 361, 362, 363, AND 364; |
   | | MEMORANDUM OF POINTS AND |
26 | | AUTHORITIES; AND DECLARATION OF |
   | | ALEXIS M. MCGINNESS |
27 | | |
   | | [LOCAL BANKRUPTCY RULE 9075-1(B)] |
28 | | |

Jeffer Mangels
Butler & Mitchell LLP
JMBM

**TO THE HONORABLE GERALDINE MUND, UNITED STATES
BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND
INTERESTED PARTIES:**

Westrim Inc. dba Westrim Crafts, debtor and debtor-in-possession herein (the "Debtor") respectfully submits its Ex Parte Application (the "Application") for Order Shortening Time to Hear (1) *Debtor's Motion Authorizing (A) Sale of Certain Assets of the Estate, Free and Clear of all Liens, Encumbrances and Interests; (B) Disposal of Certain Environmental and Consumer Non-Compliant Products; and (c) Abandonment of Certain Personal Property* (the "Liquidation Sale Motion"), a copy of which is attached hereto as **Exhibit A** (excluding exhibits thereto) and (2) *Debtor's Motion to Continue Financing Pursuant to the Final Order (A) Authorizing Postpetition Financing and Granting Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362 and 364; (B) Authorizing Use of Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364* (the "Continued DIP Financing Motion"), a copy in substantial form is attached hereto as **Exhibit B** (excluding declaration and exhibits).  The Application is filed pursuant to Federal Rule of Bankruptcy Procedure 9014 and 9027(d) and Local Bankruptcy Rule 9075-1(b), and is supported by the Declaration of Alexis M. McGinness (the "McGinness Declaration"), filed concurrently herewith, the Liquidation Sale Motion and the Continued DIP Financing Motion attached hereto, and filed concurrently herewith.

## I.    INTRODUCTION

Debtor respectfully requests the Court grant Debtor's Application and shorten the notice period order to allow Debtor's Continued DIP Financing Motion and Debtor's Liquidation Sale Motion to be heard on the earliest available date of the Court's convenience.

## II.    BASIS FOR RELIEF

Pursuant to Local Bankruptcy Rule 9075-1(b)(2), an application for order shortening time must: (i) describe the nature of the relief requested in the underlying motion, identify the parties affected by the relief requested in the motion, and state the reasons necessitating a hearing

Jeffer Mangels
Butler & Mitchell LLP

JMBM

1  on shortened time; and (ii) be supported by the declaration of one or more competent witnesses

2  under penalty of perjury that justifies the setting of a hearing on shortened time and establishes a

3  prima facie basis for the granting of the underlying motion.

4            All the foregoing requirements are satisfied as demonstrated below:

5    **A.**    **State Relief Requested**

6            **1.**    **Continued DIP Financing Motion**

7            Debtor respectfully requests in its Continued DIP Financing Motion that this Court

8  authorize the Debtor to continue to utilize the post-petition financing under the Newstar Loan

9  Agreement, up to the amount forecasted in the Liquidation Budget (as defined in the Continued DIP

10  Financing Motion), subject to the same terms as set forth in the *Final Order (A) Authorizing*

11  *Postpetition Financing and Granting Security Interests and Superpriority Administrative Expense*

12  *Status Pursuant to 11 U.S.C. §§ 361, 362 and 364; (B) Authorizing Use of Cash Collateral; (C)*

13  *Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection*

14  *Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364*, as amended by the terms set forth in the

15  Continued DIP  Financing Motion, such as expiration of the such use on July 31, 2011 (versus the

16  termination upon maturity on June 3, 2011).

17            **2.**    **Liquidation Sale Motion**

18            Debtor respectfully requests in its Liquidation Sale Motion be granted in order to

19  authorize Debtor:

20            (1) Sell certain (though not substantially all) Remaining Assets[1] (as defined in the

21  Motion), consisting of generally Non-Bead Inventory, Bead Inventory and other Fixed Assets as

22  follows:

23            (a) the Remaining Assets shall be sold free and clear of liens, claims, interests

24                 and encumbrances, pursuant to 11 U.S.C. § 363(f).  Pursuant to 11 U.S.C.

25                 § 363(e),   the liens asserted by Newstar and the Bridge Lenders in the

26  ───────────────

27  [1] A full schedule of the Non-Bead Inventory, Bead Inventory and Fixed Assets (as defined in the attached Liquidation Sale Motion) is attached as Exhibits A-C  to the Declaration of Ronald B. Cooper thereto.

28

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

7872282v1

Remaining Assets to be sold will attach to the net proceeds of sale, in the same order and priority as said interest(s) existed on the date the sale is approved or consummated. At Closing, the net sale proceeds will be paid over to Newstar up to the amount of and on account of its claim secured by its senior lien against such Remaining Assets;

(b) Debtor intends to proceed to liquidate the Remaining Assets by selling these obsolete products to certain liquidation specialists or the highest bidder, as described in the attached Motion;

f) As set forth in the Motion, Debtor anticipates receiving approximately 15% - 20% recovery of the standard cost for the Non-Bead and Bead Inventory. The Debtor anticipates a return of at least $50,000 for the Fixed Assets.

(2) dispose of certain products in guidance with applicable law that do not comply with certain environmental and consumer standards; and

(3) abandon certain personal property (as defined in the Motion) after July 31, 2011, which is located at the Van Nuys Warehouse located at 7855 Hayvenhurst Avenue, Van Nuys, California 91406-1712 because such personal property is burdensome to the estate, especially given Debtor's necessity to vacate the Van Nuys Warehouse upon concluding Debtor's obligations under the Transition Services Agreement.

**B.** **Identify the Parties Affected by the Relief Requested in the Liquidation Sale Motion**

Newstar Business Credit LLC ("Newstar") and the Bridge Lenders, who are the only known secured creditors of Debtor's Remaining Assets (as defined in the Liquidation Sale Motion) and Debtor are the parties affected by the relief requested in the Continued DIP Financing Motion and Liquidation Sale Motion. Potential bidders interested in acquiring Debtor's Remaining Assets through the liquidation may also be affected by the relief requested.

Debtor has been informed that Newstar and Bridge Lenders to not oppose this Application. Debtor also conferred with the Committee's counsel and they stated that do not oppose

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

the requests made in this Application to shorten time.

**C.    State the Reasons For Necessitating a Hearing on Shortened Time**

There are numerous considerations that necessitate a hearing at the earliest available court date:

Foremost, time is of the essence:

- Debtor's Continued DIP Financing Motion requests authorization for the Debtor to obtain financing and use cash collateral to fund the proposed liquidation process, with expiration of funding as of July 31, 2011.  If the Court is not inclined to grant Debtor's motion, Debtor will immediately file a motion to abandon its Remaining Assets before the end of June so that it may avoid unnecessary administrative claims that will be incurred as of the first of the month.

- Debtor must vacate the Van Nuys Warehouse (as defined in numerous motions) no later than the TSA Expiration Date (which is July 15, 2011, or upon DCWC Acquisition Corp, assignee of Blue Moon Beads Acquisition Corp.'s notification of its intent to extend, July 31, 2011).

- Thus, if the Court is inclined to grant Debtor's motion, Debtor needs adequate time upon this Court's approval of the sale of certain assets to conduct the liquidation, sale and delivery of the Remaining Assets as contemplated in the Liquidation Sale Motion by no later than July 31, 2011.  Any delay in obtaining this Court's approval will have a negative impact on Debtor's ability to maximize the value of its Remaining Assets prior to losing access to the Van Nuys Warehouse.

Debtor is in the predicament of needing to request this Application because it was unable to conduct the liquidation sale process without funding provided by its secured lender Newstar.

Newstar did not approve the funding until late yesterday, June 21, 2011, after days of negotiations.

Serious consideration was raised as to whether Debtor would merely abandon the Remaining Assets

rather than conduct an orderly liquidation of its Remaining Assets as contemplated in the

Liquidation Sale Motion based on whether or not Newstar funded such a liquidation process.

With regard to the Court's determination of an appropriate date to schedule the shortened

notice hearing, Debtor informs the Court that:

- On <u>June 28, 2011</u>, Debtor's Status Conference is scheduled at 10:00 a.m.

- On <u>July 12, 2011</u>, there are four other motions scheduled for hearing:
  - Debtor's Motion to Reject the Van Nuys Lease;
  - Debtor's Motion to Reject Certain Unexpired Leases;
  - Landlord Van Nuys Industrial Center LLC's Motion for Relief from Stay;
  - Secured Creditor Newstar Business Credit LLC's Motion to Compel

### D.    <u>Declaration in Support of Motion</u>

The McGinness Declaration is annexed hereto and sets forth the chronology of

events that justify the setting of the hearing on the shortened notice.  The Sale Liquidation Motion

should be granted in order to allow the orderly liquidation of Debtor's Remaining Assets, maximize

the value of the assets for the benefit of the estate.  And thus, the Continued DIP Financing Motion

should be granted in order to allow Debtor to pay for the expenses associated with conducting the

contemplated liquidation process set forth in the Sale Liquidation Motion.

//

//

1  **III.    CONCLUSION**

2          Based on the foregoing, Debtor respectfully requests that the Court approve the

3  Application and set the hearing on Debtor's Continued DIP Financing Motion  and Debtor's

4  Liquidation Motion to be heard on the earliest available date of the Court's convenience.

5

6                                 Respectfully Submitted,

7  DATED:  June 22, 2011                JEFFER MANGELS BUTLER & MITCHELL LLP

8

9                          By:   */s/ Alexis M. McGinness*
                                 DAVID M. POITRAS, P.C.
10                               ALEXIS M. MCGINNESS
                                 Attorneys for Debtor and Debtor-in-Possession
11                               Westrim Inc. dba Westrim Crafts

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER

7872282v1

- 7 -

1

## **DECLARATION OF ALEXIS M. MCGINNESS**

2     I, ALEXIS M. MCGINNESS, hereby declare:

3          1.      I am an attorney duly licensed to practice law in the State of California and before

4     the United States Bankruptcy Court for the Central District of California.  I am counsel to Westrim,

5     Inc., Debtor.  I have personal knowledge of the facts stated herein, and, if called as a witness, I

6     could and would competently testify thereto.

7          2.      This declaration is made in support of Ex Parte Application for Order Shortening

8     Time to Hear (1) Debtor's Motion Authorizing (A) Sale of Certain Assets of the Estate, Free and

9     Clear of all Liens, Encumbrances and Interests; (B) Disposal of Certain Environmental and

10    Consumer Non-Compliant Products; and (c) Abandonment of Certain Personal Property (the

11    "Liquidation Sale Motion") and (2) Debtor's Motion to Continue Financing Pursuant to the Final

12    Order (A) Authorizing Postpetition Financing and Granting Security Interests and Superpriority

13    Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362 and 364; (B) Authorizing Use of

14    Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting

15    Adequate Protection Pursuant to 11 U.S.C. §§  361, 362, 363 and 364 (the "Continued DIP

16    Financing Motion") (the "Application").

17         3.      A copy of the Liquidation Sale Motion is attached hereto as **Exhibit A** (excluding

18    declaration and exhibits thereto), which shall be filed in substantially the same form, today, June 22,

19    2011.

20         4.      A copy of the Continued DIP Financing Motion is attached hereto as **Exhibit B**

21    (excluding declaration and exhibits), which shall be filed in substantially he same form, today, June

22    22, 2011.

23         5.      On April 29, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief

24    under chapter 11 of title 11 of the Bankruptcy Code.

25         6.      As part of its "First Day Motions," Debtor filed its *Emergency Motion (A)*

26    *Authorizing Postpetition Financing and Granting Security Interests and Superpriority*

27    *Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362, and 364; (B) Authorizing Use of*

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    *Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting*

2    *Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362 and 364* (the "<u>DIP Financing Motion</u>").

3         7.    An Interim Order granting the DIP Financing Motion was entered on May 3, 2011

4    [Docket No. 11].

5         8.    On May 4, 2011, Debtor filed its *Motion for Order Authorizing (A) Sale of Certain*

6    *Assets of the Estate, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B)*

7    *Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other*

8    *Relief* [Docket No. 22] (the "<u>BMB Sale Motion</u>"), requesting authorization for the Debtor to sell

9    substantially all of its assets.

10         9.    The BMB Sale Motion came on for hearing on May 25, 2011 along with the final

11    hearing on the DIP Motion.

12         10.    On June 3, 2011, this Court entered the Final DIP Financing Order.

13         11.    Under the Final DIP Financing Order, Newstar's financing of the Debtor's operations

14    expired on June 3, 2011.

15         12.    On June 6, 2011, the Court entered an Order Granting Debtor's BMB Sale Motion

16    (the "<u>BMB Sale Order</u>").  The BMB Sale closed on June 7, 2011.

17         13.    As part of the BMB Sale Motion, Debtor entered into a Transition Services

18    Agreement ("<u>TSA</u>"), which provides in part, that Debtor will provide continuing on-going transition

19    services for a limited period of time to allow the efficient transition of the assets sold pursuant to the

20    BMB Sale Order.  The TSA expires July 15, 2011, with the option of an extension to July 31, 2011

21    (the "<u>TSA Expiration Date</u>").[2]  As set forth in the TSA, DCWC Acquisition Corp., as assignee of

22    Blue Moon Beads Acquisitions Corp. ("DCWC") is obligated to pay the costs of the Services (as

23    defined in the TSA) incurred based on actual out-of-pocket costs incurred.  The TSA does not

24    provide for financing of any further non-TSA based services by the Debtor, including the

25    liquidation or disposition of the Remaining Assets, as contemplated in the Liquidation Sale Motion.

26         14.    On June 21, 2011, Debtor filed its Motion to Reject Certain Unexpired Leases.

27    _____

28        [2] BMB Acquisitions Corp. must provide notice of such extension on or prior to July 1, 2011.

PRINTED ON

RECYCLED PAPER

1    15.    On June 21, 2011, I received written confirmation from Newstar Business Credit

2  LLC ("Newstar")'s counsel that Newstar was willing to fund the proposed liquidation of Debtor's

3  Remaining Assets in accordance with the Liquidation Budget (as defined in the Continued DIP

4  Financing Motion).

5    16.    I have confirmed that Newstar and the Bridge Lenders do not oppose this

6  Application.

7    17.    I have confirmed that the Committee does not oppose this Application.

8    I declare under penalty of perjury of the laws of the United States of America that the

9  foregoing is true and correct.  This declaration is executed this 22nd day of June, 2011 at Los

10  Angeles, California.

11

12

13    _____*Alexis McGinness*_____
      Alexis M. McGinness
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER

7872282v1

# EXHIBIT A

1   DAVID M. POITRAS P.C. (CA Bar No. 141309)
    ALEXIS M. McGINNESS (CA Bar No. 241449)
2   JEFFER MANGELS BUTLER & MITCHELL LLP
    1900 Avenue of the Stars, Seventh Floor
3   Los Angeles, California  90067-4308
    Telephone:    (310) 203-8080
4   Facsimile:    (310) 712-8571
    Email:        dpoitras@jmbm.com
5
    Counsel for Westrim, Inc.,
6   Debtor and Debtor-in-Possession

7
                    UNITED STATES BANKRUPTCY COURT
8                   CENTRAL DISTRICT OF CALIFORNIA
                    SAN FERNANDO VALLEY DIVISION
9

10  In re                                    CASE NO.    1:11-bk-15313-GM

11  WESTRIM, INC. dba WESTRIM CRAFTS, a      Chapter 11
    Delaware corporation.
12
                    Debtor.                  **DEBTOR'S MOTION TO CONTINUE
13                                           FINANCING PURSUANT TO THE FINAL
                                             ORDER (A) AUTHORIZING
14                                           POSTPETITION FINANCING AND
                                             GRANTING SECURITY INTERESTS AND
15                                           SUPERPRIORITY ADMINISTRATIVE
                                             EXPENSE STATUS PURSUANT TO 11
16                                           U.S.C. §§ 361, 362, AND 364; (B)
                                             AUTHORIZING USE OF CASH
17                                           COLLATERAL; (C) MODIFYING THE
                                             AUTOMATIC STAY PURSUANT TO 11
18                                           U.S.C. § 362; (D) GRANTING ADEQUATE
                                             PROTECTION PURSUANT TO 11 U.S.C. §§
19                                           361, 362, 363, AND 364**

20
                                             Hearing:
21
                                             Date:        TBD
22                                           Time:        TBD
                                             Place:       Courtroom 303
23                                                        21041 Burbank Blvd.
                                                          Woodland Hills, CA 91367
24
                                             Judge:       Hon. Geraldine Mund
25

26

27

28

PRINTED ON
RECYCLED PAPER
7872504v2

Exhibit A-11

Westrim Inc. dba Westrim Crafts, debtor and debtor-in-possession (the "<u>Debtor</u>") hereby requests that this Court authorize the Debtor to continue to utilize the post-petition financing under the Newstar Loan Agreement, up to the amount forecasted in the budget attached hereto as **<u>Exhibit A</u>**, subject to the same terms as set forth in the *Final Order (A) Authorizing Postpetition Financing and Granting Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362 and 364; (B) Authorizing Use of Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364* (the "<u>Final DIP Financing Order</u>"), as amended herein.  A copy of the Final DIP Financing Order is attached hereto as **<u>Exhibit B.</u>**

## I.    FACTS AND PROCEDURAL HISTORY

1.    On April 29, 2011 (the "<u>Petition Date</u>"), Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

2.    As part of its "First Day Motions," Debtor filed its *Emergency Motion (A) Authorizing Postpetition Financing and Granting Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362, and 364; (B) Authorizing Use of Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362 and 364* (the "<u>DIP Financing Motion</u>").

3.    An Interim Order granting the DIP Financing Motion was entered on May 3, 2011 [Docket No. 11].

4.    On May 4, 2011, Debtor filed its *Motion for Order Authorizing (A) Sale of Certain Assets  of the Estate, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief* [Docket No. 22] (the "<u>BMB Sale Motion</u>"), requesting authorization for the Debtor to sell substantially all of its assets.

5.    The BMB Sale Motion came on for hearing on May 25, 2011 along with the final hearing on the DIP Motion.

6.    On June 3, 2011, this Court entered the Final DIP Financing Order.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Exhibit A-12

7.      Under the Final DIP Financing Order, Newstar's financing of the Debtor's operations expired on June 3, 2011.

8.      On June 6, 2011, the Court entered an Order Granting Debtor's BMB Sale Motion (the "BMB Sale Order").  The BMB Sale closed on June 7, 2011.

9.      As part of the BMB Sale Motion, Debtor entered into a Transition Services Agreement ("TSA"), which provides in part, that Debtor will provide continuing on-going transition services for a limited period of time to allow the efficient transition of the assets sold pursuant to the BMB Sale Order.  The TSA expires July 15, 2011, with the option of an extension to July 31, 2011 (the "TSA Expiration Date").[1]  As set forth in the TSA, DCWC Acquisition Corp., as assignee of Blue Moon Beads Acquisitions Corp. ("DCWC") is obligated to pay the costs of the Services (as defined in the TSA) incurred based on actual out-of-pocket costs incurred.  The TSA does not provide for financing of any further non-TSA based services by the Debtor, including the liquidation or  disposition of the Remaining Assets, as contemplated in the Liquidation Sale Motion.

10.      On June 21, 2011, Debtor obtained confirmation from Newstar Business Credit LLC ("Newstar") that Newstar was willing to fund the proposed liquidation of Debtor's Remaining Assets in accordance with the budget attached hereto as Exhibit A (the "Liquidation Budget").

11.      On June 21, 2011, Debtor filed its Motion to Reject Certain Unexpired Leases.

12.      Concurrently with this Motion, Debtor is filing *Motion for Order Authorizing (A) Sale of Certain Assets of the Estate, Free and Clear of all Liens, Encumbrances and Interests; (B) Disposal of Certain Environmental and Consumer Non-Compliant Products; and (c) Abandonment of Certain Personal Property* (the "Liquidation Sale Motion"), which requests the Court's authorization to sell Debtor's Remaining Assets by the TSA Expiration Date.

**II.      RELIEF REQUESTED**

Debtor requests that this Court authorize Debtor obtain post-petition financing under the Newstar Loan Agreement, up to the amount forecasted in the budget attached hereto as **Exhibit A**, subject to the same terms as set forth in the Final DIP Financing Order with the following

---

[1] BMB Acquisitions Corp. must provide notice of such extension on or prior to July 1, 2011.

Exhibit A-13

1  amendments:

2      1.    The budget attached hereto as Exhibit A (the "Liquidation Budget") is acceptable to

3  Newstar.  Debtor can only use the proceeds of the Financing and DIP Credit Facility in accordance

4  with the Liquidation Budget.

5      2.    The provisions under Section 7(b)(v) [Failure to close the sale of the Debtor's assets

6  pursuant to the APA by June 3, 2011] is replaced with "If Debtor is dispossessed from the property

7  located at 7855 Hayvenhurst Avenue, Van Nuys, CA  91406 (the "Van Nuys Warehouse") prior to

8  July 31, 2011."

9      3.    The provision of Section 12(iii) regarding the termination of the right to use cash

10 collateral and DIP Credit Facility is hereby amended to state that Debtor's right to use Cash

11 Collateral hereunder and the DIP Credit Facility shall terminate instead at maturity on July 31,

12 2011.

13     4.    The provisions under Section 14 (pertaining to a Break Up Fee related to the BMB

14 Sale) are hereby removed.

15 **III.**    **BASIS FOR RELIEF**

16     Good cause exists for the entry of an order granting this Motion.  The Debtor has an

17 immediate and continued need to utilize the Financing and use of Cash Collateral in order to permit,

18 the winding down of its operation and liquidation of its Remaining Assets.  Debtor's access of the

19 Debtor to sufficient working capital and liquidity through the Financing and the use of Cash

20 Collateral and other financial accommodations is vital to maximizing the value of the Debtor's

21 Remaining Assets for the benefit of the Debtor's creditors and estate.

22     **A.**    **The DIP Financing Should Be Approved**

23     Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its

24 business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and

25 the borrowing is in the best interests of the estate.  See, e.g., *In re Simasko Production Co.*, 47 B.R.

26 444, 448-9 (D. Colo. 1985) (authorizing interim financing agreement where debtors' best business

27 judgment indicated financing was necessary and reasonable for benefit of estate); *In re Ames Dept.*

28 *Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

7872504v2

Exhibit A-14

debtors in possession to exercise their basic business judgment consistent with their fiduciary duties.")

Section 364(c) of the Bankruptcy Code provides, in pertinent part, as follows:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

    (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

    (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

    (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" liens. This provision provides as follows:

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

    (A) the trustee is unable to obtain such credit otherwise; and

    (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

Debtor satisfies the requirements of both sections 364(c) and (d) of the Bankruptcy Code because: (i) Debtor is unable to obtain unsecured credit or credit secured by a junior lien; and (ii) the interests of the Prepetition Lenders are adequately protected.

The continued use of the DIP Financing is for the benefit of Debtor's estate and creditors. Such financing is the sole means of preserving and maximizing the value of Debtor's Remaining Assets. With the credit provided by the DIP Financing, Debtor will be able to obtain finance the administrative costs of liquidating its Remaining Assets for the benefit of all parties-in-interest for the short period of time, through July 31, 2011. Indeed, in the absence of the DIP Financing,

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Mitchell LLP

7872504v2

- 5 -

Exhibit A-15

1   Debtor will immediately seek to abandon all its Remaining Assets.

2          As set forth in the Liquidation Sale Motion, which is being filed concurrently herewith, the

3   liquidation of the Debtor's Remaining Assets is in the best interests of the creditors and the estate

4   because Debtor has practically ceased operations, other than performing the Transition Services

5   Agreement, and the value of the remaining Assets will necessarily be lost and dissipated absent a

6   prompt sale.  The protection of the value of a debtor's assets is a valid business justification for the

7   sale of assets under § 363(b).  See, In re Chateaugay Corp. , 973 F.2d 141 (2d Cir. 1992).

8   **IV.    <u>CONCLUSION</u>**

9          For the foregoing reasons, Debtor respectfully requests this Court enter an order authorizing

10  Debtor's continued use of the Cash Collateral and DIP Financing set forth in the DIP Final

11  Financing Order, as amended hereby.

12                                  Respectfully Submitted,

13  DATED:  June 22, 2011             JEFFER MANGELS BUTLER & MITCHELL LLP

14

15                                  By:  /s/ Alexis M. McGinness
                                         DAVID M. POITRAS, P.C.
16                                       ALEXIS M. McGINNESS
                                    Attorneys for Debtor and Debtor in Possession
17                                  WESTRIM INC dba WESTIM CRAFTS

18

19

20

21

22

23

24

25

26

27

28

Exhibit A-16

# EXHIBIT B

DAVID M. POITRAS P.C. (CA Bar No. 141309)
ALEXIS M. McGINNESS (CA Bar No. 241449)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone:    (310) 203-8080
Facsimile:    (310) 712-8571
Email:        dpoitras@jmbm.com

Counsel for Westrim, Inc.,
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | CASE NO.    1:11-bk-15313-GM |
| WESTRIM, INC. dba WESTRIM CRAFTS, a Delaware corporation. | Chapter 11 |
| Debtor. | **NOTICE OF MOTION AND DEBTOR'S MOTION FOR ORDER AUTHORIZING:** |
| | **(A) SALE OF CERTAIN ASSETS OF THE ESTATE, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND** |
| | **(B) DISPOSAL OF CERTAIN ENVIRONMENTAL AND CONSUMER NON-COMPLIANT PRODUCTS; AND** |
| | **(C) ABANDONMENT OF CERTAIN PERSONAL PROPERTY** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RONALD B. COOPER IN SUPPORT THEREOF** |
| | Hearing: |
| | Date:    July 12, 2011 |
| | Time:    9:30 a.m. |
| | Place:    Courtroom 303 |
| | 21041 Burbank Blvd. |
| | Woodland Hills, CA 91367 |
| | Judge:    Hon. Geraldine Mund |

PRINTED ON
RECYCLED PAPER
7849986v1

Exhibit B-17

**TO ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that at the date, time and place set forth above or as soon thereafter as the matter can be heard, Westrim Inc. dba Westrim Crafts, debtor and debtor-in-possession (the "Debtor") will and does hereby move this Court for an Order Granting Debtor's Motion for Order Authorizing (A) Sale of Certain Assets of the Estate, Free and Clear of all Liens, Encumbrances and Interests; (B) Disposal of Certain Environmental and Consumer Non-Compliant Products; and (c) Abandonment of Certain Personal Property (the "Liquidation Sale Motion" or "Motion") for authority to:

(1) Sell certain (though not substantially all) Remaining Assets[1] (as defined in the Motion), consisting of generally Non-Bead Inventory, Bead Inventory and other Fixed Assets as follows:

(a) The Remaining Assets shall be sold free and clear of liens, claims, interests and encumbrances, pursuant to 11 U.S.C. § 363(f). Pursuant to 11 U.S.C. § 363(e), the liens asserted by Newstar and the Bridge Lenders in the Remaining Assets to be sold will attach to the net proceeds of sale, in the same order and priority as said interest(s) existed on the date the sale is approved or consummated. At Closing, the net sale proceeds will be paid over to Newstar up to the amount of and on account of its claim secured by its senior lien against such Remaining Assets;

(b) Debtor intends to proceed to liquidate the Remaining Assets by selling these obsolete products to certain liquidation specialists or the highest bidder, as described in the attached Motion;

(c) There are no contingencies to the liquidation sale. The sales must be completed by July 31, 2011;

(d) No commissions or fees shall be received or paid by the estate;

---

[1] A full schedule of the Non-Bead Inventory, Bead Inventory and Fixed Assets (as defined in the attached Motion) is attached as Exhibits A-C to the Declaration of Ronald B. Cooper.

Exhibit B-18

(e) Debtor is unaware of any estimated or possible tax consequences to the estate;

(f) As set forth in the Motion, Debtor anticipates receiving approximately 15% - 20% recovery of the standard cost for the Non-Bead and Bead Inventory. The Debtor anticipates a return of approximately $50,000.00 for all the Fixed Assets.

(2) dispose of certain products in guidance with applicable law that do not comply with certain environmental and consumer standards; and

(3) abandon certain personal property (as defined in the Motion) after July 31, 2011, which is located at the Van Nuys Warehouse located at 7855 Hayvenhurst Avenue, Van Nuys, California 91406-1712 because such personal property is burdensome to the estate, especially given Debtor's necessity to vacate the Van Nuys Warehouse upon concluding Debtor's obligations under the Transition Services Agreement.

This motion is and will be based on the notice, the memorandum of points and authorities, upon such further evidence the Court may consider at time of hearing and oral arguments.

PLEASE TAKE FURTHER NOTICE that any opposition to this motion must be in writing and in conformity with Local Bankruptcy Rule 9013-1(f) and must be filed with the Court and served upon the undersigned and upon the United State Trustee, no later than 14 days prior to the hearing and that failure to file and serve opposition as set forth above may be deemed consent to the relief sought in the motion.

DATED: June 22, 2011                JEFFER MANGELS BUTLER & MITCHELL LLP


By:  _/s/ Alexis M. McGinness_____
      DAVID M. POITRAS, P.C.
      ALEXIS M. MCGINNESS
      Attorneys for Debtor and Debtor-in-Possession
      Westrim Inc. dba Westrim Crafts

Exhibit B-19

## MEMORANDUM OF POINTS AND AUTHORITIES

Westrim Inc. dba Westrim Crafts, a Delaware corporation, debtor and debtor-in-possession in this chapter 11 case (hereinafter "Westrim" or "Debtor"), hereby moves this Court, pursuant to section 363(b) and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), for an order authorizing it to sell certain personal property consisting mostly of unsold inventory from its previously owned product lines and other personal property.

## I.    FACTS AND PROCEDURAL HISTORY

### A.    Debtor's Business Operations

1.    Westrim is a Delaware corporation and a wholly owned subsidiary of Creativity Craft, Inc., and is based in Van Nuys, California. Debtor evolved into a basic crafts business in the 1960s wholesaling products to hobby stores and sewing retailers.  Design of product was done in Southern California but virtually all production has been done in Asia since the 1970s, with the product being distributed nationwide from Debtor's Southern California distribution facility.

2.    By the early 2000s, the independent hobby and sewing stores had been replaced by the national chains of hobby and mass merchandise stores such as Michaels, JoAnn Stores, A.C. Moore, Wal-Mart and Target.  The Company grew to meet the needs of these large chains with evolving consumer trends and increasing volume.  Scrapbooking became very popular and Debtor moved its focus toward that sector, retaining the basic crafts business.  The costume jewelry making business became increasingly popular and in 2002, Westrim acquired Blue Moon Beads.

3.    Debtor acquired several craft companies between 2000 and 2006, with the intent of leveraging a common "back office" infrastructure (warehousing, accounting, IT, HR) to provide cost leverage and strengthen its relationships with key retail customers, including Michaels, JoAnn's and Wal-Mart.  Unfortunately, several factors in the mid-2000s adversely affected Debtor's  ability to sell the business as a whole and the overall business operations.

4.    The popularity of scrapbooking began to wane in the mid-2000s, negatively impacting the company's largest and most profitable division.  Significant losses in product placement due to changes in retailer strategy and increased competition results in a decline in

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Exhibit B-20

revenue from approximately $125 million in 2005 to $30 million in 2010.  As of the Petition Date, Debtor's revenue and margins were not sufficient to pay its infrastructure costs on an ongoing basis.

5.     In May 2010, Debtor sold the assets of its scrapbooking, paper crafting, wall décor, craft storage and general crafts business to ANW Crestwood.

6.     Since May 2010, in its ordinary course of business, Debtor has continued to liquidate its remaining non-bead inventory (i.e. general crafts and scrapbooking inventory not sold to ANW Crestwood) (the "Non-Bead Inventory").

7.     In 2010, sales of the remaining Non-Bead Inventory were $190,094.  The standard costs of the product sold was $1,422,270 for a 13.4% recovery of standard costs.  For the period January 1, 2011 through April 29, 2011, sales were $135,132 with a cost basis of $1,782,922 for a recovery rate of 17.3%.  Debtor anticipates a lower recovery rate, given that the most valuable remaining Non-Bead Inventory has generally been sold off and the remaining Non-Bead Inventory now consists of the less desirable remaining products.

**B.    Chapter 11 Bankruptcy Proceedings**

8.     On April 29, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

9.     On May 4, 2011, Debtor filed its Motion for Order Authorizing (A) Sale of Certain Assets of the Estate, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief [Docket No. 22] (the "BMB Sale Motion"), requesting authorization for the Debtor to sell substantially all of its assets.

10.     On June 6, 2011, the Court entered an Order Granting Debtor's  BMB Sale Motion (the "BMB Sale Order").  The BMB Sale closed on June 7, 2011.

11.     As part of the BMB Sale Motion, Debtor entered into a Transition Services Agreement ("TSA"), which provides in part, that Debtor will provide continuing on-going transition services for a limited period of time to allow the efficient transition of the assets sold pursuant to the

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

7849986v1

- 5 -

Exhibit B-21

1  BMB Sale Order.  The TSA expires July 15, 2011, with the option of an extension to July 31, 2011

2  (the "TSA Expiration Date").[2]

3  **C.    Van Nuys Warehouse**

4  Debtor is currently occupying its distribution facilities located at 7855 Hayvenhurst

5  Avenue, Van Nuys, California (the "Van Nuys Warehouse").  Debtor filed a Motion to Reject the

6  Van Nuys Lease on May 31, 2011, prior to consummation of the BMB Sale.  Debtor jointly filed a

7  stipulation requesting a continuance on the hearing until July 12, 2011 and is conducting

8  negotiations with the landlord and DCWC Acquisition Corporation, the assignee to Blue Moon

9  Beads Acquisition Corp.

10  **D.    Remaining Personal Property Subject to this Liquidation Sale Motion**

11  Debtor's remaining personal property consists of (i) non-bead inventory, such as general

12  crafts and scrapbooking material, discussed above (the "Non-Bead Inventory"); (ii) bead inventory

13  not subject the BMB Sale Order (the "Bead Inventory") and (iii) other fixed assets such as forklifts,

14  racking, office furniture, personal computers, IT equipment and vehicles (the "Fixed Assets").  A

15  full and complete list of this property is attached hereto as Exhibits A - B, respectively.

16  Collectively, the Non-Bead Inventory, Bead Inventory and Fixed Asserts are hereinafter referenced

17  as the "Remaining Assets."

18  Debtor also has certain Non-Bead Inventory and Bead Inventory that is no longer compliant

19  with environmental and other consumer product standards (the "Non-Complaint Products").  For

20  example, certain remaining inventory contains levels of lead that are too high to sell and/or donate

21  to consumers.  Similarly, certain 'Mighty Mountz' products are packaged in non-compliant

22  packaging and therefore cannot be resold or donated.

23  **E.    Claims Against Debtor's Assets**

24  **1.    Secured Creditors**

25  Newstar Business Credit LLC ("Newstar") is Debtor's senior secured lender.  Debtor has

26  investigated and believes that Newstar has a perfected and unavoidable security interest in all of the

27

28  ───────────────

[2] BMB Acquisitions Corp. must provide notice of such extension on or prior to July 1, 2011.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  Assets subject to the Liquidating Sale Motion.  See Declaration of Ronald B. Cooper (the "Cooper

2  Declaration").  The debt owed to Newstar is secured by all assets of both Debtor and Creativity,

3  Inc., a wholly owned subsidiary of Debtor.  Debtor is hopeful that the Newstar debt will be paid in

4  full through a combination of the cash paid as part of the BMB Sale (including any Earn Out

5  payments), the collection of Debtor's remaining accounts receivable and the sale of the Remaining

6  Assets contemplated by the sale described herein.

7      As of the Petition Date, a group of fourteen individuals/entities (the "Bridge Lenders")

8  assert a claim against Debtor in the amount of approximately $1,025,000 plus accrued interest and

9  costs (the "Bridge Loan").  The Bridge Lenders are comprised of a group of shareholders of

10  Creativity Crafts, Inc., Debtor's parent company.  The Bridge Lenders provided the Bridge Loan to

11  Debtor in June 2010 to fund certain operating shortfalls and to otherwise get Debtor to the "finish

12  line" to complete a out-of-court going concern sale of Debtor's then assets.  At that point in time,

13  Debtor and the Bridge Lenders reasonably believed that the value of the company in a sale would be

14  sufficient to pay creditors in full and provide a return to equity.  The Bridge Lenders' debt is

15  secured by a junior security interest in substantially all of Debtor's assets.  The Bridge Loan is

16  subordinate to the Newstar loan.  See Cooper Declaration.

17      Newstar and the Bridge Lenders are the only parties that Debtor is aware of that

18  assert a perfected security interest in the Remaining Assets that are the subject of this Motion.  See

19  Cooper Declaration.

20          **F.    Unsecured Claims**

21      In addition to the secured claims described above, there are general unsecured trade claims

22  of approximately $9.5 million in this case, including projected landlord claims.

23  **II.    SALE PROCEDURES FOR REMAINING ASSETS**

24      Debtor has established relationships with consumers, consisting of craft and mass retail

25  chain stores, discount chain stores as well as liquidation specialists for the sale of its previous

26  product lines and operating equipment as well as other liquidators interested in Debtor's other fixed

27  assets.  The following section provides Debtor's proposed procedure for the sale of its Remaining

28  Assets.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

7849986v1

Exhibit B-23

### A.    Non-Bead Inventory

In May 2010, Debtor sold the assets of its scrapbooking, paper crafting, wall décor, craft storage and general crafts business to ANW Crestwood.  Since that time, in its ordinary course of business, Debtor has continued to sell the remaining inventory from these lines of business to different craft and mass chain stores, then to discounts chains such as Ross and Big Lots and finally to liquidation specialists, including MDM Distributors, Leon Korol Co., Joe Loo and Craven Closeouts[3].  See Cooper Declaration.

Debtor estimates that its remaining Non-Bead Inventory has an approximate standard cost value of approximately $645,000 which amount includes certain Non-Compliant Products.  Based upon the previous rates of liquidation of the Non-Bead Inventory, Debtor estimates that through this final liquidation, it can recover approximately $22,000.00.  Debtor will continued to solicit offers for the remaining Non-Bead Inventory from  the liquidation specialists to maximize the value received. See Cooper Declaration.

### B.    Bead Inventory

Pursuant to the BMB Sale Order, Debtor sold the assets of its Blue Moon Beads to BMB Acquisition Corp. on June 7, 2011.  Certain of the inventory related to the beads business was not acquired by BMB Acquisition Corp., including some Non-Compliant Products.  Debtor estimates the remaining Bead Inventory has an approximate standard cost value of $1.5 million.  See Cooper Declaration.

Debtor believes that BMB Acquisition Corp. has interest in acquiring some of this remaining Bead Inventory.  Debtor anticipates that by at least mid-July, BMB Acquisition Corp. will have identified any additional Bead Inventory that it will seek to acquire.  Debtor anticipates a higher recovery value for this more desirable remaining Bead Inventory than it could otherwise obtain from other buyers.  See Cooper Declaration.

Exclusive of the Bead Inventory that BMB Acquisition Corp. seeks to acquire upon Court approval herein, Debtor will solicit offers from potential buyers for the purchase of the remaining

---

[3] Debtor will serve these entities with a copy of this Motion.

Exhibit B-24

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    Bead Inventory from similar customers as those of the Non-Bead Inventory.  Debtor also has a long

2    established relationship with Fire Mountain Gems & Beads, a liquidation specialist, who has

3    reaffirmed its interest in acquiring the remaining Bead Inventory at a price equal to approximately

4    20% of the standard costs of the items purchased.  Debtor will solicit other entities for a higher

5    recovery price and is open to unsolicited overbid offers.  See Cooper Declaration; Exhibit C thereto.

6    **C.    Fixed Assets and Other Personal Property**

7    Since the sale of a significant portion of its assets to ANW Crestwood in May 2010,

8    Debtor has significantly downsized its operations, including vacating several warehouses and

9    offices.  As a result, Debtor, in its ordinary course of business, sold certain fixed assets to

10   companies and individuals that expressed interest in such personal property.  See Cooper

11   Declaration.  Consistent with its current winding down of operations, Debtor has certain fixed assets

12   and other personal property, including forklifts, racking, office cubical furniture, computers, IT

13   equipment and vehicles (the "Fixed Assets") that it seeks to sell, which is located in the Van Nuys

14   Warehouse.  See Cooper Declaration, Exhibit B.

15   Similar to the Bead Inventory, BMB Acquisition Corp. has expressed interest in acquiring

16   some of the Fixed Assets upon further court approval.  Debtor anticipates that by at least mid-July,

17   BMB Acquisition Corp. will have identified any Fixed Assets that it will seek to acquire.  Debtor

18   anticipates a higher recovery value for these Fixed Assets from BMB Acquisition Corp. than Debtor

19   could otherwise obtain from other buyers.  See Cooper Declaration.

20   Exclusive of the Fixed Assets that BMB Acquisition Corp. seeks to acquire upon court

21   approval, Debtor will solicit offers from those companies and individuals that Debtor has a

22   relationship[4] for their purchase of the remaining Fixed Assets and is open to unsolicited overbid

23   offers.  See Cooper Declaration.

24   **1.    Truck**

25   As disclosed in Debtor's Statement of Financial Affairs, title of a 2002 Ford F150

26

27   _____
     [4] Including, but not limited to, American Warehouse Equipment, Inc. and Accessory One.
     Both of these entities will be served a copy of this Motion.

28

PRINTED ON
RECYCLED PAPER

7849986v1

Exhibit B-25

Pickup (VIN #1FTRW07L42KD88959) (the "Truck") is titled in the name of Victor Chevalier

("Chevalier"), an employee of Debtor.  Debtor inadvertently did not transfer title to itself after

reimbursing Chevalier for the purchase price in 2002.   Chevalier holds title despite Debtor paying

all insurance and license fees since 2002.  The Truck was used for work purposes and is in fair

condition.  As part of its liquidation, Debtor seeks authorization to sell the Truck to Chevalier at the

Kelley's Blue Book fair market value, which is $3,190.  See Cooper Declaration; Exhibit C thereto.

### D.    Overbidding

The Debtor intends to solicit parties it has knowledge are interested in acquiring the

Remaining Assets.  By this Motion, Debtor provides notice to any other interested party that Debtor

is amenable to offers for the purchase of the Remaining Assets (which are identified specifically in

Exhibits A - B) that exceed the estimated sale value set forth herein.

### E.    Compliance with Rule 6004 and LBR 6004

In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary

course of business may be by private sale or by public auction. Debtor shall file an itemized

statement of the property sold, the name of the purchaser and the  purchase price no later than 21

days after the liquidating sale has been completed, pursuant to LBR 6004-1(g).

### F.    No Intent to Hire Auctioneer, Liquidator or Broker

Debtor believes that it is in the best interest of its creditors for Debtor to conduct the

liquidation itself, rather than employing an auctioneer.  Debtor believes it is in the creditor's best

interest to maximize the value of the assets, and dispose of the remaining assets expeditiously while

Debtor still has access to the remaining Inventory and Fixed Assets located in the Van Nuys

Warehouse, which such access shall terminate on the TSA Expiration Date when Debtor must

vacate the premises upon completion of the Transition Services Agreement.

Debtor believes that it is well suited to conduct such liquidation.  Debtor has significant

relationships with buyers of the products that it seeks to sell and will be able to maximize the

benefit of these sales for the creditors by reducing administrative costs associated with the fees

associated with employing a broker or auctioneer.  In addition, due to the time constraints of

1    vacating the Van Nuys Warehouse, Debtor can expeditiously complete these contemplated

2    transactions.

3

4    **III.    THE SALE OF THE ASSETS IS IN THE BEST INTEREST OF THE ESTATES AND**

5    **THERE IS A SOUND BUSINESS JUSTIFICATION FOR THE SALE BEING**

6    **PRESENTED TO THIS COURT**

7          The Ninth Circuit has ruled in cases under the Bankruptcy Code that a sale of a debtor's

8    property outside the ordinary course of business should be approved if it is in the best interests of

9    the estate and its creditors. *In re The Huntington Ltd.*, 654 F.2d 578, 589 (9th Cir. 1981); *In re*

10   *Equity Funding Corp.*, 492 F.2d 793, 794 (9th Cir. 1974). Whether a sale is in the best interests of

11   the estate and of the creditors of the estate continues to be one of the significant factors under the

12   Bankruptcy Code. See, *In re the Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).

13         In addition to the requirement that the sale be in the best interests of the estate and the

14   creditors of the estate, the Bankruptcy Appellate Panel of the Ninth Circuit as well as the Second

15   Circuit and the Fifth Circuit Court of Appeals have held that in order for a debtor-in-possession or

16   trustee to satisfy its fiduciary duty to the debtor, creditors and equity security holders, a motion to

17   sell assets of the estate outside of the ordinary course of business must articulate a sound business

18   justification for the use, sale or lease of the property outside the ordinary course of business. *In re*

19   *Walter,* 83 B.R. 14 (Bankr. 9th Cir. 1988); see also, *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d

20   Cir. 1983); *In re Continental Airlines, Inc.,* 780 F.2d 1223 (5th Cir. 1986) and *In re Wilde Horse*

21   *Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991).

22         In the present case, the relief requested is in the best interests of creditors and the estate

23   because Debtor has practically ceased operations, other than performing the Transition Services

24   Agreement, and the value of the Remaining Assets will necessarily be lost and dissipated absent a

25   prompt sale. The protection of the value of a debtor's assets is a valid business justification for the

26   sale of assets under § 363(b). See, *In re Chateaugay Corp.,* 973 F.2d 141 (2d Cir. 1992) (approving

27   the sale of substantially all of the assets of one of the debtor's subsidiaries over the objections of the

28   creditors' committee. The court upheld the lower court's finding that further delay would create a

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Exhibit B-27

1  risk that the assets would be sold later, and for less).  Moreover, based upon the evidence presented,

2  Debtor believes that it is clear that the estate is receiving fair and adequate value for the Remaining

3  Assets.

4            **A.        The Statutory Standard**

5            The power of the bankruptcy court to authorize sales of estate property free and clear of

6  liens has long been recognized.  *Van Huffel v. Harkelrode*, 284 U.S. 225, 52 S.Ct. 115 (1931).

7  Section 363(f) provides that a debtor-in-possession may sell property of the estate pursuant to §§

8  363(b) and (c)), free and clear of any such interest in such property of an entity other than the estate,

9  if any one of the five requirements of § 363(f) are met.[5]  *In the Matter of Circus Time, Inc.*, 5 B.R. 1

10  (Bankr.D.Me. 1979).

11            Newstar and the Bridge Lenders consent to the sale proposed in this Motion free and clear of

12  liens, claims, encumbrances and other interests.  Debtor is not aware of any other party that asserts a

13  perfected security interest in the Remaining Assets to be sold pursuant to the procedures set forth

14  herein.  <u>See</u> Cooper Declaration.  Therefore, Debtor has satisfied § 363(f)(2) and Debtor is entitled

15  to the relief requested as a matter of law.

16            **B.        Debtor Has Provided Adequate Protection to Those Parties Which**

17                   **Assert an Interest in the Assets of The Estate Which Are to be Sold Free**

18                   **and Clear of Liens**

19            11 U.S.C. § 363(e) provides that sales of property under § 363 are predicated upon the

20  estate providing the entity with an interest in the Remaining Assets to be sold with adequate

21  protection for said interest.  By the Motion, the liens asserted by Newstar and the Bridge Lenders in

22  

23            [5] 11 U.S.C. §363(f) provides that: the trustee may sell property under subsection (b) or (c) of
this section free and clear of any interest in such property of an entity other than the estate, only if -
24  -
           (1) applicable non-bankruptcy law permits sale of such property free and clear of such
25  interest;
           (2) such entity consents;
26            (3) such interest is a lien and the price at which such property is to be sold is greater than the
aggregate value of all liens on such property;
27            (4) such interest is in bona fide dispute; or
           (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money
28  satisfaction of such interest.

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels
      Butler & Mitchell LLP

7849986v1

**Exhibit B-28**

the Remaining Assets to be sold will attach to the net proceeds of sale, in the same order and priority as said interest(s) existed on the date the sale is approved or consummated. At Closing, the net sale proceeds will be paid over to Newstar up to the amount of and on account of its claim secured by its senior lien against such Remaining Assets by depositing the sales proceeds in the trust account established at Union Bank where the BMB Sale proceeds are held.

## IV.    DISPOSAL OF NON-COMPLIANT PRODUCT

Debtor has knowledge that a portion of the Remaining Assets consist of products that cannot be resold and/or donated because such product does not satisfy certain environmental and/or consumer protection standards. For example, certain of the older, unsold Non-Bead and Bead Inventory consists of products that exceed permitted levels of lead. As a result, the property is burdensome to the Debtor's estate but should not merely be abandoned due to the environmental concerns associated with these products. See Cooper Declaration. Debtor intends to use the services of Crown Disposal, who Debtor has previously used for such services and estimates that the cost of disposal could be between $2,000 - $4,000. These Non-Compliant Product are, however, secured collateral of Debtor's secured creditors. Therefore, Debtor seeks authorization to properly dispose of such Non-Compliant Products.

## V.    ABANDONMENT OF CERTAIN PERSONAL PROPERTY

As the Court is aware, Debtor filed its Motion to Reject the Van Nuys Lease, and the motion has been continued to July 12, 2011. Debtor also believes that BMB Acquisition Corp. has reached an agreement with the Van Nuys Warehouse landlord for BMB Acquisition Corp. to occupy the premises through at least July 31, 2011. BMB Acquisitions has also agreed to allow Debtor to continue use of the Van Nuys Warehouse, without cost, so that Debtor can perform the Transition Services Agreement (which, even upon an extension expires on July 31, 2011) and is permitting Debtor to simultaneously wind down its other operations. Debtor also filed its motion to reject certain leases effective July 31, 2011[6]. Thus, Debtor seeks this Court's authorization to abandon the

---

[6] Debtor's motion to reject unexpired leases also requests the Court's authorization to abandon certain leased equipment to lessors.

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

7849986v1

- 13 -

Exhibit B-29

1  Remaining Assets that it is unable to otherwise liquidate as of the TSA Expiration Date (the

2  "Unsold Assets").  Debtor believes that there is no equity in Unsold Assets given the retail value

3  will not exceed the legal expenses, closing costs and other expenses (most relevant, the monthly

4  Van Nuys Warehouse rent of approximately $167,000 per month) associated with a sale of the

5  Unsold Assets after the TSA Expiration Date.  Any sale after the TSA Expiration Date will not

6  likely result in any significant return to the Debtor's bankruptcy estate.

7       Based on the foregoing circumstances, the Debtor's interest in the Unsold Assets after the

8  TSA Expiration Date is inconsequential value for the benefit of the estate, and is burdensome to the

9  estate, and as such, the Debtor requests that any Unsold Assets be abandoned.

10      Section 544 of the Bankruptcy Code provides that "after a notice and a hearing, the debtor

11  may abandon any property of the estate that is burdensome to the estate or that is of inconsequential

12  value and benefit to the estate." 11 U.S.C. § 544.

13  **VI.    <u>CONCLUSION</u>**

14      For all of the foregoing reasons, Debtor believes that the proposed sale and sale procedures

15  outlined herein, in addition to the disposal and abandonment of other personal property, are in the

16  best interests of the creditors and the bankruptcy estate.  Debtor respectfully requests the Court

17  approve this Motion.

18                          Respectfully Submitted,

19  DATED:  June 22, 2011           JEFFER MANGELS BUTLER & MITCHELL LLP

20

21                          By:  _/s/ Alexis M. McGinness_
                               Alexis M. McGinness
22                          Attorneys for Debtor and Debtor-in-Possession
                               WESTRIM INC. dba WESTRIM CRAFTS
23

24

25

26

27

28

Exhibit B-30

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1900 Avenue of the Stars, Seventh Floor, Los Angeles, California  90067-4308

A true and correct copy of the foregoing document described as ***Debtor's Ex Parte Application for an Order Shortening Time Of Hearing for: (1) Debtor's Motion for Order Authorizing:  (A) Sale Of Certain Assets of the Estate, Free and Clear Of All Liens, Claims, Encumbrances and Interests; (B) Disposal Of Certain Environmental and Consumer Non-Compliant Products; and (C) Abandonment Of Certain Personal Property; and (2) Debtor's Motion to Continue Financing Pursuant to the Final Order (A) Authorizing Postpetition Financing and Granting Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362, and 364; (B) Authorizing Use Of Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364; Memorandum Of Points and Authorities; and Declaration Of Alexis M. McGinness*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***June 22, 2011,*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On ***June 22, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***June 22, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 22, 2011 | Claudean Brandon | *Claudean Brandon* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                          **F 9013-3.1.PROOF.SERVICE**

**I. TO BE SERVED BY THE COURT VIA NEF:**

- Michael C Abel     mcabel@bhfs.com, jjung@bhfs.com;pherron@bhfs.com
- Julia W Brand     JBrand@bhfs.com, jjung@bhfs.com;pherron@bhfs.com
- Ronald K Brown     rkbgwhw@aol.com
- John H Dolan     jdolan@hunton.com
- Jeffery D Hermann     jhermann@orrick.com
- Alexis M McGinness     amm@jmbm.com, vr@jmbm.com;fc3@jmbm.com
- David M Poitras     dpoitras@jmbm.com
- Daniel H Reiss     dhr@lnbyb.com
- S Margaux Ross     margaux.ross@usdoj.gov
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov


**II. SERVED BY OVERNIGHT MAIL:**

Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367


**III. SERVED BY EMAIL:**

**COMMITTEE OF UNSECURED CREDITORS**

Nord Race Paper International Limited - adrianlau@nordrace.com
Dumont Promotional Images, Inc. - Ken@dupro.com; brad@CSSales.com; lisa@CSSales.com
Edwards Properties - peggy@edcspringdale.com
Tin Hung Products Factory HK - lap@tinfultd.com
French Paper Co. – French@frenchpaper.com; fenske@frenchpaper.com
Banaras Beads Limited – saha@beadsonweb.com; info@banarasbead.com
CSA Canadian Sales Agency, Inc. - herman@csatransportation.com


**ADDITIONAL ENTITIES TO SERVE**

Agent for Bridge Lenders
Ron Cooper
11222 Brooks Road
Windsor, CA 95492
Email: ron.cooper@creativityinc.com

Attorneys For Acquisition Corp.
Paul Hastings Janofsky & Walker LLP
Amit Mehta
191 North Wacker Drive, 30th Fl
Chicago, IL 60606
Email: amitmehta@paulhastings.com

Attorneys For Acquisition Corp.
Paul Hastings Janofsky & Walker LLP
Jennifer B. Hildebrandt
515 South Flower St, 25th Fl
Los Angeles, CA 90071
Email: jenniferhildebrandt@paulhastings.com

Attorneys For Newstar Business Cred
Hunton & Williams LLP
Gregory G. Hesse
1445 Ross Avenue, Ste 3700
Dallas, TX 75202
Email: ghesse@hunton.com
Email: alexanderj@hunton.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **F 9013-3.1.PROOF.SERVICE**