1  DAVID M. POITRAS P.C. (CA Bar No. 141309)
   ALEXIS M. McGINNESS (CA Bar No. 241449)
2  JEFFER MANGELS BUTLER & MITCHELL LLP
   1900 Avenue of the Stars, Seventh Floor
3  Los Angeles, California  90067-4308
   Telephone:    (310) 203-8080
4  Facsimile:     (310) 712-8571
   Email:          dpoitras@jmbm.com
5
6  Counsel for Westrim, Inc.,
   Debtor and Debtor-in-Possession
7

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | CASE NO.    1:11-bk-15313-GM |
| WESTRIM, INC. dba WESTRIM CRAFTS, a Delaware corporation. | Chapter 11 |
| Debtor. | **DEBTOR'S MOTION TO CONTINUE FINANCING PURSUANT TO THE FINAL ORDER (A) AUTHORIZING POSTPETITION FINANCING AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 361, 362, AND 364; (B) AUTHORIZING USE OF CASH COLLATERAL; (C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (D) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364** |
| | Hearing: |
| | Date:        TBD<br>Time:        TBD<br>Place:        Courtroom 303<br>            21041 Burbank Blvd.<br>            Woodland Hills, CA 91367<br><br>Judge:        Hon. Geraldine Mund |

PRINTED ON
RECYCLED PAPER
7872504v2

Westrim Inc. dba Westrim Crafts, debtor and debtor-in-possession (the "Debtor") hereby requests that this Court authorize the Debtor to continue to utilize the post-petition financing under the Newstar Loan Agreement, up to the amount forecasted in the budget attached hereto as **Exhibit A**, subject to the same terms as set forth in the *Final Order (A) Authorizing Postpetition Financing and Granting Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362 and 364; (B) Authorizing Use of Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364* (the "Final DIP Financing Order"), as amended herein.  A copy of the Final DIP Financing Order is attached hereto as **Exhibit B.**

## I.    FACTS AND PROCEDURAL HISTORY

1.    On April 29, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

2.    As part of its "First Day Motions," Debtor filed its *Emergency Motion (A) Authorizing Postpetition Financing and Granting Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362, and 364; (B) Authorizing Use of Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362 and 364* (the "DIP Financing Motion").

3.    An Interim Order granting the DIP Financing Motion was entered on May 3, 2011 [Docket No. 11].

4.    On May 4, 2011, Debtor filed its *Motion for Order Authorizing (A) Sale of Certain Assets  of the Estate, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief* [Docket No. 22] (the "BMB Sale Motion"), requesting authorization for the Debtor to sell substantially all of its assets.

5.    The BMB Sale Motion came on for hearing on May 25, 2011 along with the final hearing on the DIP Motion.

6.    On June 3, 2011, this Court entered the Final DIP Financing Order.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

7.      Under the Final DIP Financing Order, Newstar's financing of the Debtor's operations expired on June 3, 2011.

8.      On June 6, 2011, the Court entered an Order Granting Debtor's BMB Sale Motion (the "BMB Sale Order").  The BMB Sale closed on June 7, 2011.

9.      As part of the BMB Sale Motion, Debtor entered into a Transition Services Agreement ("TSA"), which provides in part, that Debtor will provide continuing on-going transition services for a limited period of time to allow the efficient transition of the assets sold pursuant to the BMB Sale Order.  The TSA expires July 15, 2011, with the option of an extension to July 31, 2011 (the "TSA Expiration Date").[1]  As set forth in the TSA, DCWC Acquisition Corp., as assignee of Blue Moon Beads Acquisitions Corp. ("DCWC") is obligated to pay the costs of the Services (as defined in the TSA) incurred based on actual out-of-pocket costs incurred.  The TSA does not provide for financing of any further non-TSA based services by the Debtor, including the liquidation or disposition of the Remaining Assets, as contemplated in the Liquidation Sale Motion.

10.     On June 21, 2011, Debtor obtained confirmation from Newstar Business Credit LLC ("Newstar") that Newstar was willing to fund the proposed liquidation of Debtor's Remaining Assets in accordance with the budget attached hereto as Exhibit A (the "Liquidation Budget").

11.     On June 21, 2011, Debtor filed its Motion to Reject Certain Unexpired Leases.

12.     Concurrently with this Motion, Debtor is filing *Motion for Order Authorizing (A) Sale of Certain Assets of the Estate, Free and Clear of all Liens, Encumbrances and Interests; (B) Disposal of Certain Environmental and Consumer Non-Compliant Products; and (c) Abandonment of Certain Personal Property* (the "Liquidation Sale Motion"), which requests the Court's authorization to sell Debtor's Remaining Assets by the TSA Expiration Date.

## II.      RELIEF REQUESTED

Debtor requests that this Court authorize Debtor obtain post-petition financing under the Newstar Loan Agreement, up to the amount forecasted in the budget attached hereto as **Exhibit A**, subject to the same terms as set forth in the Final DIP Financing Order with the following

---

[1] BMB Acquisitions Corp. must provide notice of such extension on or prior to July 1, 2011.

PRINTED ON
RECYCLED PAPER

7872504v2

amendments:

1. The budget attached hereto as Exhibit A (the "Liquidation Budget") is acceptable to Newstar. Debtor can only use the proceeds of the Financing and DIP Credit Facility in accordance with the Liquidation Budget.

2. The provisions under Section 7(b)(v) [Failure to close the sale of the Debtor's assets pursuant to the APA by June 3, 2011] is replaced with "If Debtor is dispossessed from the property located at 7855 Hayvenhurst Avenue, Van Nuys, CA 91406 (the "Van Nuys Warehouse") prior to July 31, 2011."

3. The provision of Section 12(iii) regarding the termination of the right to use cash collateral and DIP Credit Facility is hereby amended to state that Debtor's right to use Cash Collateral hereunder and the DIP Credit Facility shall terminate instead at maturity on July 31, 2011.

4. The provisions under Section 14 (pertaining to a Break Up Fee related to the BMB Sale) are hereby removed.

## III.    BASIS FOR RELIEF

Good cause exists for the entry of an order granting this Motion. The Debtor has an immediate and continued need to utilize the Financing and use of Cash Collateral in order to permit, the winding down of its operation and liquidation of its Remaining Assets. Debtor's access of the Debtor to sufficient working capital and liquidity through the Financing and the use of Cash Collateral and other financial accommodations is vital to maximizing the value of the Debtor's Remaining Assets for the benefit of the Debtor's creditors and estate.

### A.    The DIP Financing Should Be Approved

Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. See, e.g., In re Simasko Production Co., 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing agreement where debtors' best business judgment indicated financing was necessary and reasonable for benefit of estate); In re Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit

debtors in possession to exercise their basic business judgment consistent with their fiduciary duties.")

Section 364(c) of the Bankruptcy Code provides, in pertinent part, as follows:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

    (1)   with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

    (2)   secured by a lien on property of the estate that is not otherwise subject to a lien; or

    (3)   secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" liens. This provision provides as follows:

(d)(1)   The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

    (A) the trustee is unable to obtain such credit otherwise; and

    (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

Debtor satisfies the requirements of both sections 364(c) and (d) of the Bankruptcy Code because: (i) Debtor is unable to obtain unsecured credit or credit secured by a junior lien; and (ii) the interests of the Prepetition Lenders are adequately protected.

The continued use of the DIP Financing is for the benefit of Debtor's estate and creditors. Such financing is the sole means of preserving and maximizing the value of Debtor's Remaining Assets. With the credit provided by the DIP Financing, Debtor will be able to obtain finance the administrative costs of liquidating its Remaining Assets for the benefit of all parties-in-interest for the short period of time, through July 31, 2011. Indeed, in the absence of the DIP Financing,

1    Debtor will immediately seek to abandon all its Remaining Assets.

2    As set forth in the Liquidation Sale Motion, which is being filed concurrently herewith, the

3    liquidation of the Debtor's Remaining Assets is in the best interests of the creditors and the estate

4    because Debtor has practically ceased operations, other than performing the Transition Services

5    Agreement, and the value of the remaining Assets will necessarily be lost and dissipated absent a

6    prompt sale.  The protection of the value of a debtor's assets is a valid business justification for the

7    sale of assets under § 363(b).  See, In re Chateaugay Corp. , 973 F.2d 141 (2d Cir. 1992).

8    **IV.    <u>CONCLUSION</u>**

9    For the foregoing reasons, Debtor respectfully requests this Court enter an order authorizing

10   Debtor's continued use of the Cash Collateral and DIP Financing set forth in the DIP Final

11   Financing Order, as amended hereby.

12                             Respectfully Submitted,

13   DATED:  June 22, 2011             JEFFER MANGELS BUTLER & MITCHELL LLP

14

15                             By:  _/s/ Alexis M. McGinness_____
                                   DAVID M. POITRAS, P.C.
16                                 ALEXIS M. McGINNESS
                                   Attorneys for Debtor and Debtor in Possession
17                                 WESTRIM INC dba WESTIM CRAFTS

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER

7872504v2

# DECLARATION OF RONALD B. COOPER

I, Ronald B. Cooper, do hereby declare as follows:

1.      I am the President and Chief Executive Officer of Debtor.  I am authorized to make this declaration on behalf of Westrim, Inc. dba Westrim Crafts, debtor and debtor in possession in the above entitled bankruptcy case ("Westrim" or "Debtor").

2.      Each of the facts set forth herein are true and correct, to the best of my actual knowledge, information and belief.  If called as a witness, I could and would competently testify with respect to the matters set forth herein.

3.      Attached hereto as **Exhibit A** is a true and correct copy of the Liquidation Budget, which sets forth the forecast funding requirements for Debtor to conclude the liquidation of its Remaining Assets and wind down its business operations.

4.      I am have received email confirmation that Newstar has accepted the Liquidation Budget and agreed to finance the amounts set forth therein.

5.      The projections are based upon Debtor's actual historical business operations, including its previous undertaking to sell non-bead inventory and other personal property since May 2010.

6.      The projections are for expenses on a weekly basis.

7.      The projections set forth projected returns based on the Court's approval of the Liquidation Sale Motion on or about July 12, 2011 in order to allow the contemplated sales to occur during the period of July 13 - July 31, 2011.

8.      The projections exclude any costs associated with Debtor's performance under the Transition Services Agreement (the "TSA"), including any rent payments for the Van Nuys Warehouse, which such costs are the responsibility of DCWC Acquisition Corp., assignee of Blue Moon Beads Acquisition Corp., the Customer under the TSA.

9.      Debtor needs financing and use of cash collateral in order to finance the liquidation process contemplated in the Liquidation Sale Motion.

10.     If the continued use of the DIP Financing is approved, Debtor will have sufficient cash to maximize the value of the Remaining Assets for the benefit of Debtor's creditors and estate

JMBM  Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
7872504v2

1    through an orderly liquidation process. If no financing is available, Debtor will immediately seek to

2    abandon all Remaining Assets so that additional administrative costs that would be incurred as of

3    July 1, 2011 would be avoided.

4        11.    Debtor believes that the proposed DIP Financing is fair and reasonable under the

5    circumstances and according to ordinary and appropriate business terms.

6        12.    Attached hereto as **Exhibit B** is a true and correct copy of the Final DIP Financing

7    Motion, which was entered in this bankruptcy case on June 3, 2011.

8        13.    Newstar has reviewed the Motion this declaration is made in support thereof, and I

9    have knowledge that the amended terms to the Final DIP Financing Motion are acceptable.

10       14.    Debtor has no sources of income other than cash collateral and the proposed

11   financing available to pays its expenses associated with the liquidation process.

12       15.    For the reasons set forth above, I submit and believe that the relief requested in the

13   Motion is in the best interests of Debtor and all of its creditors. By approving the Motion, the Court

14   will provide Debtor with a meaningful opportunity to pay its creditors, without prejudicing any

15   creditor or party in interest. On the contrary, if the Motion is not approved, Debtor will be forced to

16   cease operating immediately and abandon any Remaining Assets.

17       I declare under penalty of perjury under the laws of the United States of America that the

18   foregoing is true and correct, and that this declaration was executed this 22nd day of June 2011, at

19   Windsor, California.

20

21                                            RONALD B. COOPER

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Mitchell LLP

# EXHIBIT A

Exhibit A
Liquidation Budget

| | 6/12 | 6/19 | 6/26 | 7/3 | 7/10 | 7/17 | 7/24 | 7/31 | Total | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| **Sales Revenue** | 17 | 5 | 5 | - | - | 55 | 55 | 241 | $ 378 | |
| **Cash Receipts** | - | - | - | - | - | 50 | 50 | 283 | $ 383 | |
| **Cash Disbursements** | | | | | | | | | | |
| Professional Fees | 9 | 9 | 9 | 14 | 6 | 9 | 14 | 9 | $ 79 | |
| Operational Expenses | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | $ 8 | |
| **Total Cash Disbursements** | 10 | 10 | 10 | 15 | 7 | 10 | 15 | 10 | $ 87 | |
| **Net Cash Flow** | (10) | (10) | (10) | (15) | (7) | 40 | 35 | 273 | $ 296 | |
| **Cumulative Net Cash Flow** | (10) | (20) | (30) | (45) | (52) | (12) | 23 | 296 | 296 | |
| **Collateral Analysis** | | | | | | | | | | |
| Beginning A/R | $ (15) | $ 2 | $ 7 | $ 12 | $ 12 | $ 12 | $ 17 | 22 | | |
| Sales—Beads | $ 5 | $ 5 | $ 5 | $ - | $ - | $ 50 | $ 50 | 179 | 294 | |
| Sales—Non Beads | $ 12 | $ - | $ - | $ - | $ - | $ 5 | $ 5 | 12 | 34 | |
| Sales of Other Assets | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 50 | 50 | Racking, Forklifts, Furniture, Vehicles etc. |
| **Total Sales** | $ 17 | $ 5 | $ 5 | $ - | $ - | $ 55 | $ 55 | 241 | 378 | |
| **Collections** | $ - | $ - | $ - | $ - | $ - | $ 50 | $ 50 | 283 | 383 | |
| **Ending A/R** | $ 2 | $ 7 | $ 12 | $ 12 | $ 12 | $ 17 | $ 22 | (20) | | |
| Beg Eligible Inventory—Beads | $ 1,200 | $ 1,198 | $ 1,195 | $ 1,193 | $ 1,193 | $ 1,193 | $ 1,043 | 893 | | |
| Beg Eligible Inventory—Non Beads | $ 884 | $ 581 | $ 581 | $ 581 | $ 581 | $ 581 | $ 451 | 321 | | |
| Sales at Cost—Beads | $ 3 | $ 3 | $ 3 | $ - | $ - | $ 150 | $ 150 | 893 | 1,200 | |
| Sales at Cost—Non Beads | $ 303 | $ - | $ - | $ - | $ - | $ 130 | $ 130 | 321 | 884 | |
| *End Eligible Inventory—Beads* | $ 1,198 | $ 1,195 | $ 1,193 | $ 1,193 | $ 1,193 | $ 1,043 | $ 893 | | | |
| *End Eligible Inventory—Non-Beads* | $ 581 | $ 581 | $ 581 | $ 581 | $ 581 | $ 451 | $ 321 | 0 | | |
| Product Margin—Beads | 50% | 50% | 50% | -400% | -400% | -200% | -200% | -400% | | |
| Product Margin—Non-Beads | -2425% | -2500% | -2500% | -2500% | -2500% | -2500% | -2500% | -2500% | | |
| Recovery %—Non-Prime Beads | 200% | 200% | 200% | #DIV/0! | #DIV/0! | 33% | 33% | 20% | 24% | |
| Recovery %—Non-Beads | 4% | #DIV/0! | #DIV/0! | #DIV/0! | #DIV/0! | 4% | 4% | 4% | 4% | |

Exhibit A-9

# EXHIBIT B

DAVID M. POITRAS P.C. (CA Bar No. 141309)
ALEXIS M. McGINNESS (CA Bar No. 241449)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone:     (310) 203-8080
Facsimile:     (310) 203-0567
Email:        dpoitras@jmbm.com

Counsel for Westrim, Inc.,
Debtor and Debtor-in-Possession.

FILED & ENTERED

JUN 03 2011

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | CASE NO.    1:11-bk-15313-GM |
| WESTRIM, INC. dba WESTRIM CRAFTS, a Delaware corporation,<br><br>Debtor. | Chapter 11 |

**FINAL ORDER (A) AUTHORIZING POSTPETITION FINANCING AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 361, 362, AND 364; (B) AUTHORIZING USE OF CASH COLLATERAL; (C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (D) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364**

**Interim Hearing:**

Date:     May 25, 2011
Time:     10:30 a.m.
Ctrm:     303
          21041 Burbank Blvd.
          Woodland Hills, CA 91367
Judge:    Hon. Geraldine Mund

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

7820162v1

Exhibit B-10

Upon the motion (the "<u>Motion</u>") of Westrim, Inc., debtor and debtor-in-possession (the "<u>Debtor</u>") in the above captioned bankruptcy case (the "<u>Case</u>"), pursuant to sections 105, 362, 363, 364(c), 364(d)(1), and 364(e) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"),[1] and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), seeking, among other things:

1)     That this Court consider entry of a final order in form and substance acceptable to Newstar Business Credit, LLC ("<u>Newstar</u>") authorizing borrowings under the Newstar Loan Agreement (defined below) and the DIP Credit Facility on a final basis;

2)     Authorization for the Debtor to continue to utilize the post-petition financing (the "<u>Financing</u>" or "<u>DIP Financing</u>") under the Newstar Loan Agreement, up to the amount forecasted in the budget provided by the Debtor to Newstar (the "<u>Budget</u>") subject to the terms and conditions set forth in the Loan and Security Agreement by and between Core Business Credit, LLC and the Debtor dated as of September 3, 2008, as amended by the First Amendment to Loan and Security Agreement dated as of November 24, 2008, the Second Amendment to Loan and Security Agreement dated as of December 1, 2008, the Forbearance and Third Amendment to Loan and Security Agreement dated as of January 12, 2009, the Fourth Amendment to Loan and Security Agreement dated as of April 20, 2009, the Fifth Amendment to Loan and Security Agreement dated as of August 1, 2009, the Sixth Amendment to Loan and Security Agreement dated as of September 10, 2009, the Seventh Amendment to Loan and Security Agreement dated as of December 28,

---

[1]     Unless otherwise indicated herein, all chapter, section and rule references in this Motion are to the Bankruptcy Code, 11 U.S.C. §§101-1330, the Federal Rules of Bankruptcy Procedure, Rules 1001-9036 ("<u>FRBP</u>") and the Local Bankruptcy Rules for the Central District of California ("<u>LBR</u>").

Exhibit B-11

2009, the Eighth Amendment to Loan and Security Agreement dated as of January 11, 2010, and the Ninth Amendment to Loan and Security Agreement dated as of January 20, 2011 (collectively, the "<u>Newstar Loan Agreement</u>") and pursuant to the DIP Credit Facility.[2]  The Budget is attached to the Motion and to this Final Order as <u>Exhibit 1</u>.  A copy of the Newstar Loan Agreement is attached to the Motion as <u>Exhibit 2</u>;

3)    Authorization for the Debtor to execute and enter into such documents as may be appropriate or desirable in connection with the DIP Credit Facility and to perform such other and further acts as may be required in connection with the Newstar Loan Agreement and the DIP Credit Facility;

4)    Authorization for the Debtor to a) grant the liens and security interests described herein to and for the benefit of Newstar; and b) perform its obligations under the Newstar Loan Agreement and the DIP Credit Facility;

5)    Authorization for the Debtor to cross-collateralize the Pre-Petition Debt (defined below) and any and all other obligations under the Newstar Loan Agreement with the DIP Credit Facility and merge the pre-petition credit facility provided by Newstar into the DIP Credit Facility;

6)    Authorization for the Debtor to continue to use Cash Collateral (as such term is defined in the Bankruptcy Code) to make payments to Newstar under the DIP Credit Documents, including without limitation, in respect of Pre-Petition Debt;

7)    The granting of Super-priority Claims (defined below) to Newstar payable from, and having recourse to, all pre-petition and post-petition property of the Debtor's estate and all proceeds thereof; and

---

[2]    The term "<u>DIP Credit Facility</u>" refers to the mechanism under which funds will be advanced by Newstar on a revolving basis to the Debtor in accordance with the terms of this Final Order and the DIP Credit Documents (as defined below).

PRINTED ON
RECYCLED PAPER
820162v1

- 3 -

Exhibit B-12

8)    The limitation of the Debtor's and its estate's right to surcharge against Pre-Petition Collateral or DIP Collateral pursuant to sections 506(c) and/or 552(b) of the Bankruptcy Code.

Under the circumstances and in accordance with Rules 4001(b) and (c), due and appropriate notice of the Motion, the relief requested therein, and the Final Hearing having been provided by the Debtor to Newstar, to the United States Trustee for the Central District of California, to the Official Committee of Unsecured Creditors (the "Creditors' Committee"), to creditors, and to parties in interest;

The Final Hearing having been held by this Court on May 25, 2011;

The Creditors' Committee having filed its *Opposition by Official Committee of Unsecured Creditors to Motion for Final Order (A) Authorizing Post Petition Financing and Granting Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362 and 364; (B) Authorizing Use of Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to §§ 361, 362, 363 and 364* (the "Objection") and finding that the Objection should be overruled;

Upon the record made by the Debtor at the Final Hearing, and after due deliberation and consideration, and sufficient cause appearing therefore;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,** that:

1.    *Jurisdiction*.  This Court has core jurisdiction over the Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice*.  Notice given by the Debtor of the Motion and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and no other notice need be given.

3.    *Findings Regarding the Pre-Petition Debt and Pre-Petition Liens*.

a)    The Debtor has acknowledged and agreed that in accordance with the terms of the Newstar Loan Agreement, (i) it is truly and justly indebted to

Jeffer Mangels
Butler & Mitchell LLP

JMBM

Exhibit B-13

1  Newstar, as assignee of Core Business Credit, LLC, without defense, counterclaim or

2  offset of any kind, and that, as of the Petition Date, the principal amount of loans,

3  advances and other indebtedness owed to Newstar by the Debtor under and pursuant

4  to the Newstar Loan Agreement as of the time immediately prior to the filing of the

5  petition for relief herein is approximately **$5,742,686**, plus interest accrued and

6  accruing thereon and fees, costs, reasonable out-of-pocket expenses incurred

7  (including reasonable fees, charges and disbursements of counsel and appraisers) and

8  any other charges accrued and accruing with respect thereto as provided in the

9  Newstar Loan Agreement (collectively, the "<u>Pre-Petition Debt</u>"); (ii) the Pre-Petition

10  Debt is secured pursuant to the Newstar Loan Agreement by all of Debtor's right,

11  title and interest in and to all of the following, whether owned or acquired: all

12  Accounts, Inventory (including, without limitation, Inventory in transit), Equipment,

13  General Intangibles, Chattel Paper, Letter of Credit Rights, Proprietary Rights,

14  Instruments, Documents and documents of title, Investment Property, Deposit

15  Accounts, Commercial Tort Claims, money, cash, cash equivalents, securities and

16  other personal property of any kind at any time held directly or indirectly by Newstar

17  or any affiliate of Newstar, all books and records, whether in tangible or intangible

18  form, all other assets, if any, and all accessions to, substitutions for and replacements,

19  products and proceeds of any of the foregoing (collectively, the "<u>Pre-Petition</u>

20  <u>Collateral</u>"); and (iii) on the Petition Date at the time of the commencement of this

21  Case, Newstar asserts that the value of the Pre-Petition Collateral exceeded the

22  aggregate amount of Pre-Petition Debt and that Newstar is over-secured.

23          b)      The Debtor has further acknowledged and agreed that: (i) the

24  Newstar Loan Agreement constitutes a valid, binding and enforceable agreement and

25  obligation of the Debtor; (ii) the security granted for the benefit of Newstar pursuant

26  to the Newstar Loan Agreement are valid, binding, perfected, enforceable, non-

27  avoidable and not subject to subordination (the "<u>Pre-Petition Liens</u>"); (iii) all of the

28  Pre-Petition Debt under the Newstar Loan Agreement constitutes allowable claims

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Exhibit B-14

against the Debtor and is valid, enforceable, non-avoidable and not subject to subordination; and (iv) the Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind or nature that would in any way affect the validity, enforceability, priority or non-avoidability of any of the Pre-Petition Debt owed Newstar and/or Newstar's security interests in, or liens upon, the Pre-Petition Collateral, or which would in any way reduce or affect the absolute and unconditional obligation of the Debtor to pay Newstar all of the Pre-Petition Debt; provided, however, that the provisions of this paragraph bind the Debtor only and do not bind the Debtor's estate or third parties.

    4.    *Findings Regarding the Financing.*

    a)    Good cause has been shown for the entry of this Final Order.

    b)    The Debtor has an immediate and continued need to utilize the Financing and use Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers, and customers, to make payroll, and to satisfy other working capital and operational needs.  The access of the Debtor to sufficient working capital and liquidity through incurrence of new indebtedness for borrowed money, the use of Cash Collateral to pay Pre-Petition Debt, and other financial accommodations is vital to the preservation and maintenance of the going concern value of the Debtor, which is essential in facilitating the sale of the Debtor's assets pursuant to that certain Asset Sale and Purchase Agreement (the "APA") by and among Westrim, Inc., as Seller, and Blue Moon Beads Acquisition Corp. ("Acquisition Corp."), as Purchaser.

Exhibit B-15

c)    The "<u>DIP Credit Documents</u>" shall mean and include the Newstar Loan Agreement together with this Final Order, the Interim Order,[3] as well as any additional documents reasonably requested by Newstar to effectuate the terms of the Interim Order and/or this Final Order.

d)    The Debtor is unable to obtain financing on more favorable terms from sources other than Newstar under the DIP Credit Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code without the Debtor granting to Newstar the DIP Liens and the Super-priority Claims (each defined below) under the terms and conditions set forth in the DIP Credit Documents.  The terms of the Financing and the use of Cash Collateral as provided by the DIP Credit Documents appear to be fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

e)    The Financing has been negotiated in good faith and at arm's length between the Debtor and Newstar, and all of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with the Financing and the DIP Credit Documents, including, without limitation, all loans made to the Debtor pursuant to the DIP Credit Documents (the "<u>DIP Obligations</u>"), shall be deemed to have been extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section

---

[3]    "<u>Interim Order</u>" means the *Interim Order (A) Authorizing Postpetition Financing and Granting Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362, and 364; (B) Authorizing Use of Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to §§ 361, 362, 363, and 364; and (E) Scheduling Interim and Final Hearings Pursuant to Bankruptcy Rule 4001* [Docket No. 11], which was entered in this case on May 3, 2011.

Exhibit B-16

PRINTED ON
RECYCLED PAPER
820162v1

364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

5.    *Approval of the Motion.*  The Motion is granted in all respects on a final basis.  The failure to specifically describe or include any particular provision of the DIP Credit Documents in this Final Order shall not diminish or impair the effectiveness of such provision in the DIP Credit Documents.

6.    *Authorization of the Financing and the DIP Credit Documents.*

a)    The DIP Credit Documents and the Financing are approved as set forth in this Final Order solely to the extent necessary to implement the terms and conditions of this Final Order.  The Debtor is hereby authorized to enter and execute the DIP Credit Documents.  The Debtor is hereby authorized to continue to borrow money under the Newstar Loan Agreement pursuant to the DIP Credit Documents, up to the amount forecasted in the Budget, subject to the limitations of borrowings under the DIP Credit Documents, which shall be used solely for purposes permitted under the DIP Credit Documents and the Budget, including, without limitation, to provide working capital for the Debtor, and to pay interest, fees and expenses in accordance with the DIP Credit Documents.

b)    In furtherance of the foregoing, and without further approval of this Court, the Debtor is expressly authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), to perform all obligations thereunder and to pay all fees that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Credit Facility and Financing, including, without limitation:

i.    The execution, delivery and performance of such documents which Newstar reasonably requests as necessary or desirable to effectuate, evidence, document or perfect the

JMBM | Jeffer Mangels
Butler & Mitchell LLP

liens related to the Financing (provided, that Newstar shall not be required to obtain any such additional documents and any delay in obtaining or failure to obtain any such additional documents shall not limit or impair Newstar's rights as acknowledged and granted under the DIP Credit Documents),

ii.    The non-refundable payment to Newstar of the fees enumerated in the Newstar Loan Agreement and the DIP Credit Documents,

iii.    The performance of all other acts required under or in connection with the DIP Credit Documents, and

c)    Upon execution and delivery of the DIP Credit Documents and the entry of this Final Order, the DIP Credit Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the DIP Credit Documents.  No obligation, payment, transfer or grant of security under the DIP Credit Documents or this Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.    *DIP Credit Facility Terms*.  The DIP Credit Facility and total post-petition financing will be a continuation of the pre-petition financing provided to the Debtor by Newstar and will be subject to all of the same provisions as stated in the Newstar Loan Agreement, except as otherwise provided in the DIP Credit Documents.

a)    Budget.  Attached to the Motion and to this Final Order is a 6-week budget (previously referred as the "Budget") that is acceptable to Newstar.  The Debtor may only use the proceeds of Financing and the DIP Credit Facility in accordance with the Budget.  The credit limit under the DIP Credit Facility is set at $7.0 million, subject further to the caveat that draws against the DIP Credit Facility is

PRINTED ON
RECYCLED PAPER
820162v1

- 9 -

Exhibit B-18

may not exceed those forecasted in the Budget. The Debtor shall promptly comply with any reasonable request of any party in interest for additional information regarding the components of any line item contained in the Budget.

b)    Default and Termination Provisions. Defaults and Events of Default under the DIP Credit Facility and with respect to all Financing shall be as set forth in the Newstar Loan Agreement except that the Events of Default described in subsections 12.1(c)-(e) of the Loan and Security Agreement dated September 3, 2008, as amended, shall not be applicable during the Case so long as it is a chapter 11 case; and provided that each of the following shall constitute an additional Event of Default:

i.    The entry of an order dismissing the Case or converting the Case to one under chapter 7 of the Bankruptcy Code;

ii.    Debtor's failure for any one week to achieve total sales equal to or greater than 90 percent of the total sales projected for such week in the Budget;

iii.    Debtor's total cumulative cash collections at any time is less than 90 percent of total cash collections projected for such week in the Budget;

iv.    Debtor's total cumulative cash expenses at any time exceed 100 percent of the total expenses projected in the Budget; and

v.    Failure to close the sale of the Debtor's assets pursuant to the APA by June 3, 2011.

8.    *Super-priority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtor with priority over any and all administrative expenses and diminution claims (including all claims for adequate protection under 507(b) of the Bankruptcy Code), and all other claims against the Debtor, except to the extent of the Carve-Out (as

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Exhibit B-19

defined below) now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (the "Super-priority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof.

9.    *DIP Liens*.  As security for the Financing and the DIP Obligations, effective and perfected upon the date the Interim Order was entered (and effective upon the date of this Final Order, also securing all Pre-Petition Debt to Newstar), and without the necessity of the execution, recordation of filings by the Debtor of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, Newstar is hereby granted security interests in and liens on all property of the Debtor and its estate identified in clause (a) and clause (b) below (collectively referred to as the "DIP Collateral"), (all such liens and security interests granted to Newstar, pursuant to this Final Order and the DIP Credit Documents, the "DIP Liens"), subject only to the Carve-Out (as defined below):

a)    Pursuant to section 364(d) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected first priority senior security interests in and liens upon all pre- and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, all Accounts, Inventory (including, without limitation, Inventory in transit), Equipment, General Intangibles, Chattel Paper, Letter of Credit Rights, Proprietary Rights, Instruments, Documents and documents of title, Investment Property, Deposit Accounts, Commercial Tort Claims, causes of action (excluding causes of action under sections 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any proceeds thereof (collectively, the "Avoidance

JMBM | Jeffer Mangels Butler & Mitchell LLP

Actions")) money, cash, cash equivalents, securities and other personal property of any kind at any time held directly or indirectly by Newstar or any affiliate of Newstar, all books and records, whether in tangible or intangible form, all other assets, if any, and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing. Newstar's liens and security interests shall continue in full force and effect in all DIP Collateral until all Pre-Petition Debt and DIP Obligations have been fully paid and all commitments of Newstar under the DIP Credit Documents have been terminated.

b)    Pursuant to sections 364(c)(2) and (c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected (i) first priority senior security interests in and liens upon all DIP Collateral that is not otherwise subject to a lien, and (ii) junior security interests in and liens upon all DIP Collateral that is subject to a lien. Newstar's liens and security interests shall continue in full force and effect until all Pre-Petition Debt and DIP Obligations have been fully paid and all commitments of Newstar under the DIP Credit Documents have been terminated.

c)    The Pre-Petition Liens and the DIP Liens and Super-priority Claims granted herein to Newstar shall be subject and subordinate only to the payment of a carve-out (the "Carve-Out") in an amount not to exceed $135,000 for the payment of allowed but unpaid fees of the Debtor's professionals approved by the Court pursuant to sections 327 or 328 of the Bankruptcy Code.

10.    *Protection of Newstar's Rights*.

a)    Effective upon entry of this Final Order, all Pre-Petition Debt and DIP Obligations (both pre- and post-petition) will be secured by all Pre-Petition Collateral and DIP Collateral and all collections and proceeds of both Pre-Petition Collateral and DIP Collateral shall be applied to the amounts due under the Newstar Loan Agreement (both pre- and post-petition) including the Pre-Petition Debt, Financing, and DIP Credit Facility, and the pre-petition credit facility provided by

JMBM | Jeffer Mangels Butler & Mitchell LLP

Exhibit B-21

Newstar under the Newstar Loan Agreement shall be merged into the DIP Credit Facility.

b)    The Financing will be a continuation of the pre-petition financing provided by Newstar and will have all of the same provisions as stated in the Newstar Loan Agreement, except as otherwise provided herein.

c)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit Newstar to continue to require that all proceeds of Pre-Petition Collateral and DIP Collateral be deposited to an account controlled by Newstar and to permit Newstar to apply the proceeds of that collateral to Pre-Petition Debt and/or Financing.

d)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit Newstar to exercise (i) immediately upon the occurrence of an Event of Default or the Termination Date, its right to cease funding under the DIP Credit Facility; (ii) and (ii) upon the occurrence and during the continuance of an Event of Default or the Termination Date and, in any case, subject to its obtaining an order for relief from or modification of the stay upon the giving of five (5) days' prior written notice (or such shorter notice as is approved by the Court) to the Debtor, counsel to the Creditors' Committee, the United States Trustee for the Central District of California, and those additional parties, if any, who have filed a request for all notices served in this case, all other rights and remedies, including, without limitation, any and all rights and remedies against the DIP Collateral and Pre-Petition Collateral provided for in the DIP Credit Documents (including, without limitation, the right to setoff monies of the Debtor in accounts maintained with or controlled by Newstar).   In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor hereby waives its right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such

JMBM | Jeffer Mangels
Butler & Mitchell LLP

relief would in any way impair or restrict the rights and remedies of Newstar set forth in this Final Order or the DIP Credit Documents. In no event shall Newstar be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or Pre-Petition Collateral.

11. *Limitation on Charging Expenses against Collateral.* Effective upon entry of this Final Order, no expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or Pre-Petition Collateral securing the Pre-Petition Debt or DIP Obligations pursuant to section 506(c) and/or 552(b) of the Bankruptcy Code or any similar principle of law.

12. *Termination of Right to Use Cash Collateral and DIP Credit Facility.* The Debtor's right to use Cash Collateral hereunder and the DIP Credit Facility shall terminate without further order of this Court (i) if there is an Event of a Default under the DIP Credit Facility, or (ii) if a trustee under chapter 7 or 11 of the Bankruptcy Code, a responsible officer, or an examiner with enlarged powers relating to the operations of the business (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) Code shall be appointed in the chapter 11 case, or (iii) at maturity on June 3, 2011.

13. *Accrued Deferred Time Off Compensation for Debtor's Employees.* Provided that (i) the APA has not terminated; (ii) the Debtor is continuing to pursue a sale of its assets pursuant to the terms of the APA (including a sale to an alternative bidder) (the "Sale"), (iii) an Event of Default has not occurred under the DIP Loan; and (iv) the Debtor terminates the employment of any of its employees (each an "Involuntarily Terminated Employee") prior to the closing of the Sale, the Debtor is authorized to pay as expenses in accordance with forecasts in the Budget up to 50 percent of accrued deferred time off compensation ("DTO") to any such Involuntarily Terminated Employee. The foregoing, however, does not provide the Debtor with

Jeffer Mangels
Butler & Mitchell LLP

Exhibit B-23

authority to pay the DTO to any employee who voluntarily terminates his/her employment (each a "<u>Voluntarily Terminated Employee</u>") prior to the closing of the Sale.  In the event the Debtor closes the Sale, the Debtor is authorized to pay up to $194,000, less any amounts previously paid to Involuntarily Terminated Employees for DTO, for (i) any DTO owing to any employee terminated as a result or consequence of the Sale; (ii) any DTO owing to any Involuntarily Terminated Employee terminated prior to the closing of the Sale and (iii) any DTO owing to any Voluntarily Terminated Employee.

14.    *Breakup Fee*.  In the event that Acquisition Corp. is not the successful bidder in the Sale, Acquisition Corp. shall be entitled to the payment of a breakup fee (the "Breakup Fee") in accordance with terms outlined in the APA and the Order Establishing Bidding Procedures for the Sale of a Substantial Portion of the Estate's Assets.

15.    *Perfection of DIP Liens*.

a)    Newstar is authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action, including the making of notations on certificates of title, in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not Newstar shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted hereunder, including the making of notations on certificates of title, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination at the time and on the date of entry of this Interim Order.  Upon the request of Newstar, the Debtor, without any further consent of any party, is authorized to take, execute and deliver such instruments (without representation or

Jeffer Mangels
Butler & Mitchell LLP
JMBM

Exhibit B-24

warranty of any kind) to enable Newstar to further validate, perfect, preserve and enforce the DIP Liens.

b)      A certified copy of this Final Order or the Interim Order may, in the discretion of Newstar, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order or the Interim Order for filing and recording.

c)      Effective upon the entry of this Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties, or (ii) the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest or other post petition collateral related thereto, shall be deemed to have no force and effect with respect to the transactions granting post petition liens in favor of Newstar in accordance with the terms of the DIP Credit Documents or this Final Order.

16.    *Preservation of Rights Granted under the Interim Order*.

a)      Except to the extent of the Carve-Out, no claim or lien having a priority superior to or *pari passu* with those granted by the Interim Order or by this Final Order to Newstar, shall be granted or allowed while any portion of the Pre-Petition Debt, Financing, or the DIP Obligations remain outstanding or while Newstar has any commitment under the DIP Credit Documents, and the DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise (except to the extent of the Carve-Out).

b)      Unless (i) all DIP Obligations and Pre-Petition Debt shall have been paid in full, and (ii) the commitments under the DIP Credit Documents have

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Exhibit B-25

terminated (all such actions, collectively, the "<u>DIP Pay-Out</u>"), the Debtor shall not seek, and it shall constitute an Event of Default and a termination of the DIP Credit Facility and right to use Cash Collateral if the Debtor seeks, or if there is entered (i) any modifications or extensions of this Final Order without the prior written consent of Newstar, and no such consent shall be implied by any other action, inaction or acquiescence by Newstar, or (ii) an order dismissing the Case. If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (1) the Super-priority Claims and DIP Liens granted to Newstar pursuant to the Interim Order and this Final Order shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order and this Final Order until the DIP Pay-Out shall have occurred (and that such Super-priority Claims and DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest, except to the extent of the Carve-Out) and (2) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in (1) above.

c)   If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations incurred prior to the actual receipt of written notice by Newstar of the effective date of such reversal, stay, modification or vacation, or (ii) the validity or enforceability of any security interest, lien or priority authorized or created hereby or pursuant to the DIP Credit Documents with respect to any DIP Obligations. Notwithstanding any such reversal, stay, modification or vacation, any DIP Obligations incurred by the Debtor to Newstar prior to the actual receipt of written notice by Newstar of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order, and Newstar shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code,

1   this Final Order and pursuant to the DIP Credit Documents with respect to all DIP

2   Obligations.

3        d)    Except as expressly provided in this Final Order or in the DIP

4   Credit Documents, the Carve-Out, the DIP Liens and the Super-priority Claims and

5   all other rights and remedies of Newstar granted by the provisions of this Final Order

6   and the DIP Credit Documents shall survive, and shall not be modified, impaired or

7   discharged by the entry of an order converting the Case to one under chapter 7,

8   dismissing the Case, or by any other act or omission, nor shall the Carve-Out, the DIP

9   Liens, the Super-priority Claims or any of the other rights and remedies of Newstar

10  granted by the provisions of this Final Order and the DIP Credit Documents be

11  modified, impaired or discharged by the entry of an order confirming a plan of

12  reorganization in the Case and, pursuant to section 1141(d)(4) of the Bankruptcy

13  Code, the Debtor has waived any discharge as to any remaining DIP Obligations.

14  The terms and provisions of this Final Order and the DIP Credit Documents shall

15  continue in the Case, in any successor case if the Case ceases, or in any superseding

16  chapter 7 case under the Bankruptcy Code, and the Carve-Out, the DIP Liens, the

17  Super-priority Claims and all other rights and remedies of Newstar granted by the

18  provisions of this Final Order and the DIP Credit Documents shall continue in full

19  force and effect until the Pre-Petition Debt and the DIP Obligations are paid in full.

20      17.    *Limitation on Use of Financing Proceeds and Collateral / Bar Date*.

21      a)    Notwithstanding anything herein or in any other order by this

22  Court to the contrary, no borrowings, letters of credit, Cash Collateral, DIP

23  Collateral, Pre-Petition Collateral, or any Carve Out may be used to (i) object, contest

24  or raise any defense to, the validity, perfection, priority, extent or enforceability of

25  any amount due under the DIP Credit Documents, the Newstar Loan Agreement, or

26  the liens or claims granted under this Final Order or the DIP Credit Documents or

27  Newstar Loan Agreement, (ii) assert any action for preferences, fraudulent

28  conveyances, other avoidance power claims or any other claims, counterclaims or

JMBM | Jeffer Mangels
Butler & Mitchell LLP

causes of action, objections, contests, or defenses against Newstar or its affiliates, representatives, attorneys or advisors, (iii) prevent, hinder or otherwise delay Newstar's assertion, enforcement or realization on the Cash Collateral, the DIP Collateral, or the Pre-Petition Collateral in accordance with the DIP Credit Documents or this Final Order, (iv) seek to modify any of the rights granted to Newstar, or under the DIP Credit Documents, in the Case without such parties' prior written consent or (v) pay any amount on account of claims arising prior to the filing of the petition for relief herein unless such payments on account of such pre-petition claims are (a) approved by an Order of this Court and (b) in accordance with the Budget or (c) otherwise made to Newstar as approved by Newstar in its sole discretion.

b)       Any party in interest and the Creditors' Committee shall have sixty (60) days from the date of entry of the Interim Order to file, on behalf of the Debtor's estate, and to serve upon counsel for Newstar, objections or complaints respecting the validity, extent, priority, avoidability or enforceability of the Pre-Petition Debt or the Pre-Petition Liens and security interests (each a "Challenge").  In the event (i) a Challenge is not filed and properly served within the 60-day period described above, or (ii) a final order is entered denying all such Challenges, then the Debtor, any Creditors' Committee and any other party in interest, including any subsequent chapter 11 or chapter 7 trustee shall thereafter be forever barred from bringing any Challenge, and the Pre-Petition Debt and the liens and security interests of Newstar shall be deemed valid, enforceable, perfected, unavoidable and not subject to subordination, and the repayment of the Pre-Petition Debt and final and indefeasible, for all purposes in this chapter 11 case and any subsequent chapter 7 case; *provided, however*, the foregoing shall not in any way prejudice the rights of Newstar to pursue and recover any fees, expenses, interest, or costs contemplated in the Interim Order.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Exhibit B-28

18.    *Proof of Claim*.  Notwithstanding any claims bar or similar order of this Court, Newstar shall not be required to file in this case or any succeeding chapter 7 case for claims arising under the Newstar Loan Agreement.

19.    *Debtor Prepetition Bank Accounts*.  Debtor is authorized to maintain and keep open Union Bank account number 3030179314 (the "<u>Account</u>"), and Union Bank is authorized and directed to process, from and after the date of Debtor's chapter 11 filing, all debits and credits presented for the Account.  Moreover, Union Bank is authorized and directed to transfer any funds in Debtor's name at Union Bank in accordance with account agreements in effect prior to the Petition Date.

20.    *Effect of Entry of Order*.  Entry of this Final Order shall be without prejudice to any and all rights, remedies, claims and causes of action which Newstar may have against the Debtor or third parties, and without prejudice to the right of Newstar to seek relief from the automatic stay in effect pursuant to Bankruptcy Code section 362, or any other relief in the Case, and the right of the Debtor to oppose any such relief.

21.    *Order Governs*.  In the event of any conflict between the provisions of this Final Order and any other DIP Credit Documents, the provisions of this Final Order shall govern.

22.    *Binding Effect: Successors and Assigns*.  The DIP Credit Documents and the provisions of this Final Order shall be binding on all DIP Obligations made pursuant to this Final Order, upon all parties in interest in the Case, including, without limitation, Newstar, the Creditors' Committee appointed in the Case, and the Debtor and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor) and shall inure to the benefit of Newstar and the Debtor and their respective successors and assigns, provided, however, that Newstar shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estate of the Debtor.  In determining to make any loan under the DIP Credit

Exhibit B-29

PRINTED ON
RECYCLED PAPER
820162v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

1 Facility, in exercising any rights or remedies as and when permitted pursuant to this

2 Final Order or the DIP Credit Documents, Newstar shall not be deemed to be in

3 control of the operations of the Debtor or to be acting as a "responsible person" or

4 "owner or operator" with respect to the operation or management of the Debtor (as

5 such terms, or any similar terms, are used in the United States Comprehensive

6 Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.*

7 as amended, or any similar federal or state statute).

8

9                                                   #   #   #

10

11

12

13

14

15

16

17

18

19

20

21

22

23     DATED: June 3, 2011                                _____

24                                       United States Bankruptcy Judge

25

26

27

28

PRINTED ON

RECYCLED PAPER

820162v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

- 21 -

Exhibit B-30

Chapter 11 - Stalking Horse Cash Flow Forecast
Creativity Inc.

| Forecast Week # | 1 W/E 4/22 | 2 W/E 4/29 | 3 W/E 5/6 | 4 W/E 5/13 | 5 W/E 5/20 | 6 W/E 5/27 | 7 W/E 6/3 | 7 Week Total |
|---|---|---|---|---|---|---|---|---|
| Beginning Revolver | $ 5,387 | $ 5,675 | $ 5,978 | $ 6,410 | $ 6,403 | $ 6,286 | $ 5,895 | |
| Sales Revenue | 691 | 453 | 160 | 920 | 125 | 255 | 195 | 2,799 |
| Cash Receipts | 108 | 262 | 186 | 295 | 432 | 568 | 279 | 2,130 |
| **Cash Disbursements** | | | | | | | | |
| Employee (Payroll, Benefits) | 137 | 87 | 137 | 75 | 131 | - | 131 | 697 |
| Accrued DTO | - | - | 90 | - | - | - | 104 | 194 |
| Facilities (Rent, Utls., Tax, Ins.) | - | 25 | 167 | 25 | - | - | 25 | 242 |
| Bead Suppliers | 67 | 350 | 150 | 150 | 150 | 150 | 150 | 1,167 |
| Hostage Expenses | - | 13 | - | - | - | - | - | 13 |
| Operational Expenses (post petition) | - | 65 | 16 | 36 | 32 | 25 | 15 | 189 |
| Core Fees | 12 | 25 | 57 | - | - | - | 45 | 139 |
| Debtor Professional Fees (Finance, Le | 180 | - | 2 | 2 | 2 | 2 | 127 | 315 |
| Total Cash Disbursements | 396 | 565 | 619 | 288 | 314 | 177 | 596 | 2,955 |
| Net Cash Flow | (288) | (303) | (433) | 7 | 117 | 391 | (317) | (825) |
| Ending Revolver Balance | $ 5,675 | $ 5,978 | $ 6,410 | $ 6,403 | $ 6,286 | $ 5,895 | $ 6,212 | (825) |

Confidential

4/25/2011

Exhibit B-31

Chapter 11 - Stalking Horse Cash Flow Forecast
Creativity Inc.

| | 1 W/E 4/22 | 2 W/E 4/29 | 3 W/E 5/6 | 4 W/E 5/13 | 5 W/E 5/20 | 6 W/E 5/27 | 7 W/E 6/3 | 7 Week Total |
|---|---|---|---|---|---|---|---|---|
| Forecast Week # | | | | | | | | |
| **Collateral Analysis** | | | | | | | | |
| Beginning Gross A/R | $ 2,002 | $ 2,594 | $ 2,766 | $ 2,717 | $ 3,298 | $ 2,926 | $ 2,529 | |
| A/R Reserves | 432 | 432 | 432 | 432 | 432 | 432 | 432 | |
| Beginning Net A/R | 1,570 | 2,162 | 2,334 | 2,285 | 2,866 | 2,494 | 2,097 | |
| Sales—Prime Beads | 526 | 315 | 120 | 920 | 125 | 255 | 195 | |
| Sales—Non-Prime Beads | 155 | 128 | - | - | - | - | - | |
| Sales—Non Beads | 10 | 10 | 40 | - | - | - | - | |
| Total Sales | 691 | 453 | 160 | 920 | 125 | 255 | 195 | |
| Collections | 108 | 262 | 186 | 295 | 432 | 568 | 279 | |
| Writeoffs/D&A at 15% | (9) | 19 | 22 | 44 | 66 | 85 | 42 | |
| Ending Gross A/R | $ 2,594 | $ 2,766 | $ 2,717 | $ 3,298 | $ 2,926 | $ 2,529 | $ 2,402 | |
| Beg Eligible Inventory—Prime Beads | $ 2,057 | $ 2,031 | $ 2,045 | $ 2,144 | $ 1,834 | $ 1,929 | $ 1,966 | |
| Beg Eligible Inventory—Non-Prime Beads | 2,416 | 1,641 | 1,001 | 1,001 | 1,001 | 1,001 | 1,001 | |
| Beg Eligible Inventory—Non Beads | 884 | 794 | 634 | 2 | 2 | 2 | 2 | |
| Purchases (Prime Beads) | 200 | 150 | 150 | 150 | 150 | 150 | 150 | |
| Sales at Cost—Prime Beads | 226 | 135 | 52 | 460 | 55 | 112 | 86 | |
| Sales at Cost—Non-Prime Beads | 775 | 640 | 632 | - | - | - | - | |
| Sales at Cost—Non Beads | 90 | 10 | - | - | - | - | - | |
| End Eligible Inventory—Prime Beads | 2,031 | 2,045 | 2,144 | 1,834 | 1,929 | 1,966 | 2,031 | |
| End Eligible Inventory—Non-Prime Beads | 1,641 | 1,001 | 1,001 | 1,001 | 1,001 | 1,001 | 1,001 | |
| End Eligible Inventory—Non Beads | $ 794 | $ 634 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | |
| **Payments** | | | | | | | | |
| Employee (Payroll, Benefits) | $ 137 | $ 87 | $ 137 | $ 75 | $ 131 | $ - | $ 131 | $ 697 |
| Accrued DTO | - | - | 90 | - | - | - | 104 | 194 |
| Facilities (Rent, Utilities, Taxes, Insur... | - | 25 | 167 | 25 | - | - | 25 | 242 |
| Bead Suppliers | 67 | 350 | 150 | 150 | 150 | 150 | 150 | 1,357 |
| Hostage Suppliers | - | 13 | - | - | - | - | - | 13 |
| Operational Expenses (post petition) | 67 | 66 | 57 | 36 | 32 | 25 | 15 | 189 |
| Core Fees | 12 | 25 | - | - | - | 25 | 45 | 139 |
| Debtor Professional Fees (Finance, Le... | 180 | - | 2 | 2 | 2 | 2 | 127 | 315 |
| TOTAL Payments | $ 396 | $ 565 | $ 619 | $ 288 | $ 314 | $ 477 | $ 596 | |
| Beginning Loan Balance | $ 5,387 | $ 5,675 | $ 5,978 | $ 6,410 | $ 6,403 | $ 6,286 | $ 5,895 | |
| Ending Loan Balance | 5,675 | 5,978 | 6,410 | 6,403 | 6,286 | 5,895 | 6,212 | |

Confidential

4/25/2011

Exhibit B-32

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as ***FINAL ORDER (A) AUTHORIZING POSTPETITION FINANCING AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 361, 362, AND 364; (B) AUTHORIZING USE OF CASH COLLATERAL; (C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (D) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On ***May 26, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

*Served By Overnight Mail*:
Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***May 26, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 26, 2011 | Claudean Brandon | /s/ Claudean Brandon |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

820162v1

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                **F 9013-3.1.PROOF.SERVICE**

Exhibit D-33

1

<u>**ADDITIONAL SERVICE INFORMATION**</u>

2

**I.** <u>**TO BE SERVED BY THE COURT VIA NEF**</u>:

3

- John H Dolan    jdolan@hunton.com
- Daniel H Reiss    dhr@lnbyb.com
- S Margaux Ross    margaux.ross@usdoj.gov
- ron.cooper@creativityinc.com
- amitmehta@paulhastings.com
- jenniferhildebrandt@paulhastings.com
- ghesse@hunton.com
- alexanderj@hunton.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                   F 9013-3.1.PROOF.SERVICE
                                                                         Exhibit B-54

PRINTED ON

RECYCLED PAPER

820162v1

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **FINAL ORDER (A) AUTHORIZING POSTPETITION FINANCING AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 361, 362, AND 364; (B) AUTHORIZING USE OF CASH COLLATERAL; (C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (D) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** ¥ Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **May 26, 2011**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- John H Dolan    jdolan@hunton.com
- Alexis M McGinness    amm@jmbm.com, vr@jmbm.com;fc3@jmbm.com
- David M Poitras    dpoitras@jmbm.com
- Daniel H Reiss    dhr@lnbyb.com
- S Margaux Ross    margaux.ross@usdoj.gov
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

- ron.cooper@creativityinc.com
- amitmehta@paulhastings.com
- jenniferhildebrandt@paulhastings.com
- ghesse@hunton.com
- alexanderj@hunton.com

☐ Service information continued on attached page

---

PRINTED ON

RECYCLED PAPER

820162v1

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*    **F 9021-1.1.NOTICE.ENTERED.ORDER**

Exhibit D-35

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1900 Avenue of the Stars, Seventh Floor, Los Angeles, California  90067-4308

A true and correct copy of the foregoing document described as ***Debtor's Motion to Continue Financing Pursuant to the Final Order (A) Authorizing Postpetition Financing and Granting Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 361, 362, and 364; (B) Authorizing Use of Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***June 22, 2011***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **June 22, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***June 22, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 22, 2011 | Claudean Brandon | *(signature)* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                      **F 9013-3.1.PROOF.SERVICE**

**I.  TO BE SERVED BY THE COURT VIA NEF:**

- Michael C Abel    mcabel@bhfs.com, jjung@bhfs.com;pherron@bhfs.com
- Julia W Brand    JBrand@bhfs.com, jjung@bhfs.com;pherron@bhfs.com
- Ronald K Brown    rkbgwhw@aol.com
- John H Dolan    jdolan@hunton.com
- Jeffery D Hermann    jhermann@orrick.com
- Alexis M McGinness    amm@jmbm.com, vr@jmbm.com;fc3@jmbm.com
- David M Poitras    dpoitras@jmbm.com
- Daniel H Reiss    dhr@lnbyb.com
- S Margaux Ross    margaux.ross@usdoj.gov
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**

*Served By Overnight Mail*:
Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

**II.  SERVED BY U.S. MAIL**

American Warehouse Equipment, Inc.
18643 Eddy St.
Northridge, CA 91342
Attn:  President - Joe Occhipinti

Accessory One
19821 Nordhoff Pl Suite 112
Chatsworth, Ca 91311
Attn:  Richard Saman President

MDM Distributors
610 North Pershing
Energy IL 62933
Attn:  Mark Redfearn

Leon Korol Co
2050 East Devon Ave
Elk Grove Village IL 60007
Attn:  Judy Gorr

Joe Loo
383 Marina Park Lane
Long Beach Ca 90803
Attn: Joe Loo

Craven Closeouts
1930 George Street
Melrose Park Il 60160
Attn:  Carrie Craven

Chuck Wolfmueller
Fire Mountain Gems and Beads
1 Fire Mountain Way
Grants Pass, Oregon 97526

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                                    **F 9013-3.1.PROOF.SERVICE**

## III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL

### SERVED BY EMAIL:

**COMMITTEE OF UNSECURED CREDITORS**

Nord Race Paper International Limited - adrianlau@nordrace.com
Dumont Promotional Images, Inc. - Ken@dupro.com; brad@CSSales.com; lisa@CSSales.com
Edwards Properties - peggy@edcspringdale.com
Tin Hung Products Factory HK - lap@tinfultd.com
French Paper Co. – French@frenchpaper.com; fenske@frenchpaper.com
Banaras Beads Limited – saha@beadsonweb.com; info@banarasbead.com
CSA Canadian Sales Agency, Inc. - herman@csatransportation.com


**ADDITIONAL ENTITIES TO SERVE**

Agent for Bridge Lenders
Ron Cooper
11222 Brooks Road
Windsor, CA 95492
Email: ron.cooper@creativityinc.com

Attorneys For Acquisition Corp.
Paul Hastings Janofsky & Walker LLP
Amit Mehta
191 North Wacker Drive, 30th Fl
Chicago, IL 60606
Email: amitmehta@paulhastings.com

Attorneys For Acquisition Corp.
Paul Hastings Janofsky & Walker LLP
Jennifer B. Hildebrandt
515 South Flower St, 25th Fl
Los Angeles, CA 90071
Email: jenniferhildebrandt@paulhastings.com

Attorneys For Newstar Business Cred
Hunton & Williams LLP
Gregory G. Hesse
1445 Ross Avenue, Ste 3700
Dallas, TX 75202
Email: ghesse@hunton.com
Email: alexanderj@hunton.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                                    **F 9013-3.1.PROOF.SERVICE**